This is an appeal from a decree of the Orphans Court granting letters of administration on the estate of Joseph Swistak, who died intestate, to the designee of the Polish consul. The decedent, Swistak, was born in the village of Dobra at the time when it was a part of the Austro-Hungarian empire. Dobra was situated in what later became a part of the Republic of Poland. Swistak came to the United States and resided in Passaic county until his death on May 28th, 1939. He was unmarried and left no blood kin in the United States, but was survived by two sisters and a brother, all living in Poland. Shortly before his death, Swistak made an application for a certificate of arrival, which apparently he intended to use as a basis for a naturalization application, but no application was filed, and of course he never became naturalized as an American citizen. The estate consists of several thousand dollars on deposit in various *Page 139 
banks. Application was made by the appellant, a creditor of the estate for an undertaker's bill in the sum of approximately $350, for the issuance to him of letters of administration. The Polish consul filed a caveat and applied for issuance of letters to one Makowsky as designee of the consulate. It is from the decree appointing Makowsky that this appeal was taken.
Irrespective of any question of the prior right of the consulate, which will be discussed later, appellant, who is at most a mere creditor for the amount of his undertaker's bill and has no other interest in the estate, has no right to appointment, since under the statute, R.S. 3:7-6, in the absence of qualified kin, letters may be granted to any fit person applying therefor, and it has not been shown that the person actually appointed is unfit. In addition, it is a question whether appellant is a person aggrieved so as to give him a right to appeal, since his only claim is for his undertaker's bill, for which there are ample funds in the estate, and which respondent stands ready to pay as soon as this appeal disposes of the stay, because of the appeal itself. Dietz v. Dietz, 38 N.J. Eq. 483.
However, the respondent had a prior right by reason of the facts shown on appeal, in which the matter was taken up denovo, and by the terms of certain treaties, which are before the court. By the terms of article 6, of the Constitution of the United States, among other things, "All treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." Although there does not appear to be any express decision in the State of New Jersey to the effect that the court must take judicial notice of treaties made by the United States and of the public acts of the government of the United States, in reason, this must be so, since the Constitution imposes the duty upon all state courts of enforcing them, and as expressly provided by the Constitution, they have superiority over any local statute. The federal courts and certain of the state courts have uniformly held that judicial knowledge *Page 140 
must be taken. Hauenstein v. Lymhan, 100 U.S. 483; Montgomery
v. Deeley, 3 Wis. 709; Dole v. Wilson, 16 Minn. 525; La Rue
v. Insurance Co., 68 Kan. 539.
In addition to the fact that the court is bound to take judicial notice of the treaties, the two in question were identified and authenticated by the testimony of a former member of the Polish bar who is an expert in international law. By chapter 6, article 70 of the Treaty of St. Germaine-en-laye of 1919 between the United States and Austria, it was provided that all persons having previous Austro-Hungarian citizenship should become citizens of that country exercising sovereignty at the time of the execution of the treaty. This applied to that former part of Austro-Hungary which had become the Republic of Poland as a consequence of the war and, therefore, conferred Polish citizenship upon decedent. There were other provisions giving certain rights to the citizenship of other countries, but these have no relevance here since Swistak did not exercise such right. The Treaty of Versailles, between the United States and others and Poland, contains a similar clause, providing that all persons born in Poland, whether of German, Austrian, Hungarian or Russian nationality should be ipso facto nationals of Poland, irrespective of their place of residence. A further article of this treaty gives to a Polish consular officer the right to be appointed as administrator, and further provides that in case of the death of a national of either of the parties intestate and without any known heirs, resident in the country of his decease, he shall be appointed administrator, unless such appointment is in conflict with local law or unless there shall be some good reason to the contrary.
The fact that not long after Swistak's death, Poland was overrun by German and Russian armies and has been held under military subjection, does not affect the binding force of these treaties upon this court, since the government of the United States has refused to recognize the conquest and still recognizes the Polish government as having sole authority.
It further appears that the sisters and brother of decedent were, shortly after his death, in touch with the Polish consulate *Page 141 
with the idea of giving the consulate the express authority to represent them in connection with the estate. The formal requirements were not complied with, apparently due to the confused situation brought about by the military occupation, but I consider that it is a fair inference that the next of kin were at least willing that the consulate should handle the estate.
The decree appealed from will be affirmed. *Page 142