TURIDDO SIMONI, APPELLANT, v. S. GRILL D'IPPOLITO, PLAINTIFF-RESPONDENT.

Argued November 19, 1951—Decided December 10, 1951.

*Mr. Joseph Narrow* argued the cause for the appellant (*Mr. Louis F. DiNicola,* attorney).

*Mr. Samuel P. Orlando* argued the cause for the respondent (*Mr. Joseph Adamo,* attorney).

The opinion of the court was delivered by

OLIPHANT, J.   Flora Casazza died intestate on December 22, 1951, in Vineland, New Jersey.   Her husband had prede-

ceased her and she left no next of kin resident in this country. Her only next of kin were her three sisters and a brother, all residents and nationals of Italy. She left an estate of real and personal property, the value of the personal property being not more than $900.

More than 40 days after the death of the intestate Joseph C. DeMarco, a funeral director and a creditor to the extent of the funeral bill, made application to the surrogate of Cumberland County for the appointment of S. Grill D'Ippolito as administrator of the estate. Notice of the said application was served upon Turiddo Simoni, the Italian Consul, at Trenton, New Jersey. The return day of the notice was April 20, 1951. Prior to the service of this notice the Italian Consul had no knowledge of the death of Flora Casazza. He immediately and prior to April 20, 1951, by way of what is termed a cross-complaint, made application to the surrogate to be appointed the administrator. This cross-complaint charges that Flora Casazza left her surviving as her heir at law and next of kin one Lugia Rossi, a sister residing in Genoa, Italy. It was later discovered that the said Lugia Rossi was not the next of kin nor one of the next of kin of the decedent, but as heretofore mentioned, three sisters and brother are the next of kin. The record fails to disclose that the cross-complaint was amended to show these facts.

Both the application of Mr. DeMarco and that of the Italian Consul were presented to the judge of the Cumberland County Court, sitting in the Probate Division. No testimony was taken, no facts were stipulated, arguments were made by respective counsel and on July 12, 1951, an order was entered adjudging that letters of administration be granted to S. Grill D'Ippolito. Such an informal proceeding is not consistent with the provisions of *Rule* 3:79–5, the underlying principle of which is that there must be a showing on the record which forms the foundation for each order or judgment entered by the court.

An appeal was taken from the above-mentioned order to the Appellate Division and was certified here by this court on its own motion. Here again we are presented with an informal record which is not in compliance with *Rules* 4:2–6 and 1:2–22 or 1:2–23, but since the question presented is a narrow one and there is no dispute as to the precise issue, we proceed to the determination thereof.

There being a dispute as to the right of administration, the matter was properly cognizable before the County Court. *Rule* 5:3–5.

*R. S.* 3:7–6 provides, *inter alia,* as follows:

"If such intestate leaves no relations justly entitled to the administration of his personal estate, or if his next of kin shall not claim the administration within forty days after the death of such intestate, the ordinary or surrogate may grant letters of administration to any fit person applying therefor."

Appellant, the Italian Consul, contends that he, being the representative in this State of the next of kin of the deceased, has a prior, paramount and exclusive right to administration of the estate and that if his right was not paramount and exclusive but on a parity with that of a creditor there was an abuse of judicial discretion in not granting the letters to him.

For the first 40 days after the death of an intestate the spouse and next of kin have the sole right to apply for letters. After the expiration of the 40-day period a consul of a foreign country which has a treaty with this government has the right and privilege to apply for appointment as and to serve as an administrator where the decedent was a national of such foreign country or where the heirs and next of kin are nationals of such country, *In re Sinovcic,* 80 *N. J. Eq.* 206 (*E. & A.* 1912); *In re Swistak,* 129 *N. J. Eq.* 138 (*Prerog.* 1941); *Zolezzi v. Tarantola,* 138 *N. J. Eq.* 579 (*Ch.* 1946), but his right to the appointment is neither exclusive nor superior. See *In re Tenneson,* 18 *N. J. Misc.* 245 (*Orph. Ct.* 1940); *In re Carmelo Gurrieri,* 35 *N. J. L. J.* 240

(1912); *Matter of Francesco Freccia*, 27 *N. J. L. J.* 367 (1904); *N. J. Practice, Wills and Administration*, Clapp, § 379, *p.* 247.

██ The Federal Constitution, *art.* VI, *par.* 2, provides that

> "* * * all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding."

and this court will take judicial notice of treaties existing between this government and foreign countries. *In re Swistak, supra; Hauenstein v. Lynham*, 100 *U. S.* 483, 25 *L. Ed.* 628 (1880). The consular convention existing between the Government of the United States and Italy, *Treaty Series No.* 178, *art. XVII*, provides that the respective consuls shall enjoy all the rights and privileges granted to officers of the same grade as the most favored nation, and the appellant has furnished us with a copy of the convention between this Government and the Republic of Costa Rica, March 19, 1950, as evincing consular rights of a most favored nation, *Treaty Series* No. 2045. By the terms of that convention a consular officer is a proper party to be granted letters of administration under facts such as exhibited here, but nothing in the convention gives him a superior or prior right thereto. *Art IX, § 2, pars. a, c.* The treaty existing between this country and Sweden is most frequently relied upon as entitling a consul to be appointed administrator of an intestate national, but it is held in the majority of jurisdictions that a provision such as is contained therein is not so mandatory as to require that state laws regarding the administration of estates should be superseded, see annotation in 100 *A. L. R.* 1527 at *p.* 1531 and the cases cited therein, and we specifically point out that the right of a consular agent to be appointed administrator or to receive and distribute funds on behalf of his nationals is subject to the provisions of *R. S.* 3:26–18 (*L.* 1940, *c.* 148).

See also *In re Url, 7 N. J. Super.* 455 *(Cly. Ct.* 1950), appeal dismissed 5 *N. J.* 507 (1950).

While the point is not briefed, the question of the construction of *R. S.* 3:7–6 was raised at the argument as to whether or not under that statute the County Court had the authority to grant letters to one other than the person applying therefor. The intention of the Legislature was clearly to provide for the appointment of the person applying therefor or his nominee. When the matter of the granting of letters of administration is once properly before the court it may appoint any person, individual or corporate, legally entitled to same and possessing the necessary qualifications therefor. The right to administration is personal in the next of kin, and if they fail to apply for or waive it in favor of some one else, it is for the court to appoint, in its discretion, such proper person as will accept it. *In re Cresse,* 28 *N. J. Eq.* 236 *(Prerog.* 1877).; *Cramer v. Sharp,* 49 *N. J. Eq.* 558, 561 *(Prerog.* 1892).

There are no facts before us which convince us there was such an abuse of discretion by the court below in appointing D'Ippolito as administrator of this estate so as to require a reversal of the order.

Judgment affirmed.

*For affirmance*—Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—5.

*For reversal*—Chief Justice VANDERBILT, and Justice HEHER—2.