36 N.J. Super. 375 (1955)
115 A.2d 610
JOSE GONZALEZ FANTONY, PLAINTIFF,
v.
KATHRYN B. FANTONY, DEFENDANT, AND REPUBLIC OF CUBA, INTERVENOR.
Superior Court of New Jersey, Chancery Division.
Decided July 1, 1955.
*377 Mr. Robert D. Grosman, attorney for plaintiff.
Mr. Charles Handler, attorney for defendant.
Mr. Leon Dreskin, attorney for intervenor.
KNIGHT, J.S.C.
The facts of this case are set forth in the opinion of the Appellate Division, reported in 31 N.J. Super. 14 (App. Div. 1954) and need not be again recited. The case was remanded to permit the filing of a supplemental complaint and to give the defendant "the opportunity to litigate the validity and effect of the Cuban decree and other pertinent questions."
Recognition will be accorded in this State to a Cuban decree under the principles of "comity between nations" (Hachez v. Hachez, 124 N.J. Eq. 422 (E. & A. 1938)) if the Cuban court was a court of competent jurisdiction and its action conformed to accepted notions of "due process of *378 law." It may be assumed for purposes of this decision that jurisdiction effective for the satisfaction of our standards existed, although it should be noted that the evidence as to Cuban law with respect to jurisdiction in matters of custody, as distinct from divorce (cf. May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953)) is totally lacking.
The minimal requirements of "due process of law" include reasonable notice of the nature of the proceedings and a fair opportunity to be heard therein. The summons and complaint served on the defendant in the Cuban action may be considered adequate as allowing opportunity to be heard but gives no notice or information with respect to the subject matter of custody. This proceeding, of which the defendant as a party was clearly aware, was pending at the time of service of the complaint in the Cuban suit. The defendant may well have believed, in the absence of actual notice of the scope of the Cuban proceeding, that this proceeding was to be the sole litigation concerning custody.
Bearing in mind the differentiation between divorce and custody proceedings emphasized in May v. Anderson, supra, it is doubtful that due process by way of reasonable notice as to a custody determination was given the defendant in the Cuban proceedings. Cf. Pawley v. Pawley, 46 So.2d 464 (Sup. Ct. Fla. 1950), where the court sustained the validity of a Cuban decree as a dissolution of the marriage but held it ineffective to terminate the wife's right to support.
Custody actions are sui generis. To the degree that there is an element of in personam action involved in the disposition of the rights of the parents, it seems clear that no such jurisdiction over the defendant was acquired by the extra-territorial service in the Cuban proceedings. To the degree that the proceeding may carry a resemblance to an in rem action, the familiar principle that a court first acquiring jurisdiction will retain it regardless of subsequent action by a different court applies. The instant proceeding, with all parties before the court and under its jurisdiction, was initiated before any action in Cuba; and this action is the same action so initiated despite its interruptions and procedural *379 ramifications. From either approach this court should not permit a foreign judgment to oust its effective jurisdiction first obtained.
The Legislature of this State has expressed a policy relating to custody of children who are natives of the State. R.S. 9:2-2. That policy involves positive opposition to the removal from the State of native children. The testimony of an expert witness in Cuban law indicates that a similar and probably stronger policy exists in Cuba. The impact of the full faith and credit clause of the Federal Constitution might perhaps inhibit the application of our legislative policy as to the conflicting policy of a sister state (cf. Brown v. Parsons, 136 N.J. Eq. 493 (E. & A. 1945)); but here we do not have the compulsion of "full faith and credit" but merely the force of a policy of "comity between nations." Certainly the legislative policy is effective as against the demands of comity, particularly in a situation where the reflection of a converse position shows that the proposed comity is not reciprocated.
There is testimony that there is in existence a treaty between Cuba and the United States which is applicable. Art. VI, par. 2 of the Federal Constitution makes treaties "the supreme law of the land" and binds "the judges in every State." This court will take judicial notice of existing treaties made by the United States, In re Swistak's Estate, 129 N.J. Eq. 138 (Prerog. 1941); Simoni v. D'Ippolito, 8 N.J. 271 (1951); however, counsel have failed to disclose any existing treaty with Cuba referring to recognition of judgments or decrees, and independent research has found none.
Most persuasive of all considerations with respect to the "effect of the Cuban decree" is the internal evidence of the Cuban court's approach to the problem. In our law the welfare of the child is a consideration paramount to all others in making determination of custody. The record of the Cuban proceedings, reciting all evidence taken, and the testimony of the expert in Cuban law taken in this case indicate that no evidence has been or could be received by the *380 Cuban court relevant to the welfare of the child, since an award of custody to the mother residing abroad would "fall under the materially impossible provisions" of the code. On the record it appears the Cuban court was not even apprised that a contested custody proceeding was then pending in this court with all parties before it, including the Republic of Cuba as intervenor. This court, committed as it is to the doctrine that the welfare of the child is the controlling consideration, is not bound by a custody award completely ignoring any reference to such welfare. See Henderson v. Henderson, 10 N.J. 390 (1952).
Considering then the welfare of the child as the central and controlling matter for determination, it should first be noted that in the original hearing of this cause it was determined both parents are fit and proper persons to be entrusted with the custody of this child. That conclusion was approved by the Appellate Division of this court, subject to the taking of further testimony. The additional testimony does not change that conclusion.
The child is a girl of tender years. It is traditional in our conceptions that in such cases the child is presumed to be better left in the care of its mother, provided she be equally fit (see the opinion of the Appellate Division in this case, 31 N.J. Super., at page 21 (App. Div. 1954)). This fact would in itself be dispositive of the matter if the court were to follow the inference of People of State of N.Y. ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947) that matters not actually considered in the court of prior adjudication regarding the welfare of the child may be taken into account by the tribunal reconsidering the matter.
This matter has been in litigation in this court for 3 1/2 years. During that entire period of time, this child in the most impressionable years of her life has been living in this state. The report of investigation made by the Essex County Probation Department pursuant to Rule 4:98-8(a) unequivocally indicates the child is a happy and healthy child, receiving excellent care from her mother, doing very *381 well in school and her extracurricular activities, and is receiving adequate religious training. Her routine of life should not be disrupted at this time.
Upon a consideration of the entire record and with a paramount concern for the welfare of the child, her custody is awarded to the defendant, visitation privileges and the amount for her support to be agreed upon by the parties or, in the alternative, to be fixed by the court upon proper application.