SOMPORTEX LIMITED

v.

**PHILADELPHIA CHEWING GUM COR-PORATION, Appellant,**

v.

**BREWSTER, LEEDS & CO., Inc. and M. S. International, Inc., Third-Party Defendants.**

No. 19482.

United States Court of Appeals, Third Circuit.

Argued Oct. 19, 1971.

Decided Dec. 20, 1971.

Certiorari Denied March 27, 1972.
See 92 S.Ct. 1294.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa. (Goncer M. Krestal, Philadelphia, Pa., on the brief), for Philadelphia Chewing Gum Corp.

James J. McCabe, Jr., Duane, Morris & Heckscher, Philadelphia, Pa. (Richard A. Kraemer, Philadelphia, Pa., on the brief), for Somportex Ltd.

Dennis R. Suplee, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Arthur H. Kahn, Philadelphia, Pa., on the brief), for Brewster, Leeds & Co., Inc.

Warren J. Kauffman, Abrahams & Loewenstein, Philadelphia, Pa., for M. S. International, Inc.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Several interesting questions are presented in this appeal from the district court's order, 318 F.Supp. 161, granting summary judgment to enforce a default judgment entered by an English court. To resolve them, a complete recitation of the procedural history of this case is necessary.

This case has its genesis in a transaction between appellant, Philadelphia Chewing Gum Corporation, and Somportex Limited, a British corporation, which was to merchandise appellant's wares in Great Britain under the trade name "Tarzan Bubble Gum." According to the facts as alleged by appellant, there was a proposal which involved the participation of Brewster Leeds and Co., Inc., and M. S. International, Inc., third-party defendants in the court below. Brewster made certain arrangements with Somportex to furnish gum manufactured by Philadelphia; M. S. International, as agent for the licensor of the trade name "Tarzan," was to furnish the

African name to the American gum to be sold in England. For reasons not relevant to our limited inquiry, the transaction never reached fruition.

Somportex filed an action against Philadelphia for breach of contract in the Queen's Bench Division of the High Court of England. Notice of the issuance of a Writ of Summons was served, in accordance with the rules and with the leave of the High Court, upon Philadelphia at its registered address in Havertown, Pennsylvania, on May 15, 1967. The extraterritorial service was based on the English version of long-arm statutes utilized by many American states.[1] Philadelphia then consulted a firm of English solicitors, who, by letter of July 14, 1967, advised its Pennsylvania lawyers:

I have arranged with the Solicitors for Somportex Limited that they will let me have a copy of their Affidavit and exhibits to that Affidavit which supported their application to serve out of the Jurisdiction. Subject to the contents of the Affidavit, and any further information that can be provided by Philadelphia Chewing Gum Corporation after we have had the opportunity of seeing the Affidavit, it may be possible to make an application to the Court for an Order setting the Writ aside. But for such an application to be successful we will have to show that on the facts the matter does not fall within the provision of (f) and (g) [of the long-arm statute, note 1, supra] referred to above.

In the meantime we will enter a conditional Appearance to the Writ in behalf of Philadelphia Chewing Gum Corporation in order to preserve the status quo.

On August 9, 1967, the English solicitors entered a "conditional appearance to the Writ" and filed a motion to set aside the Writ of Summons.[2] At a

---

1. The English Statute provides:
   (f) if the action begun by the Writ is brought against a Defendant not domiciled or ordinarily resident in Scotland to enforce, rescind, dissolve, annul or otherwise affect a contract, or to recover damages or obtain other relief in respect of the breach of a contract, being (in either case) a contract which—
   (i) was made within the jurisdiction, or
   (ii) was made by or through an Agent trading or residing within the Jurisdiction on behalf of a principal trading or residing out of the jurisdiction, or
   (iii) is by the terms, or by implication, governed by the English law;
   (g) If the action begun by the Writ is brought against a Defendant not domiciled or ordinarily resident in Scotland or Northern Ireland, in respect of a breach committed within the Jurisdiction of a contract made within or out of Jurisdiction, and irrespective of the fact, if such be the case, that the breach was preceded or accompanied by a breach committed out of the Jurisdiction that rendered impossible the performance of so much of the Contract as ought to have been performed within the Jurisdiction;
   Cf., the Pennsylvania Statute authorizing service on a foreign corporation, which provides:

   For the purpose of determining jurisdiction of courts within this Commonwealth, the doing by any corporation in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute "doing business". For the purposes of this subsection the shipping of merchandise directly or indirectly into or through this Commonwealth shall be considered the doing of such an act in this Commonwealth. 15 Pa.Stat.Ann. § 2011, subd. C.
   Pennsylvania decisional law has generously interpreted its long-arm statute. See state cases summarized in Siders v. Upper Mississippi Towing Corp., 423 F.2d 535 (3rd Cir. 1970).

2. The memorandum of conditional appearance was stamped with this formula: "This appearance is to stand as unconditional unless the defendant applies within fourteen days to set aside the writ and service thereof and obtains an order to that effect."
   The motion alleged:
   (1) that there was no agreement made between the Plaintiffs and De-

hearing before a Master on November 13, 1967, the solicitors appeared and disclosed that Philadelphia had elected not to proceed with the summons or to contest the jurisdiction of the English Court, but instead intended to obtain leave of court to withdraw appearance of counsel. The Master then dismissed Philadelphia's summons to set aside plaintiff's Writ of Summons. Four days later, the solicitors sought to withdraw their appearance as counsel for Philadelphia, contending that it was a conditional appearance only. On November 27, 1967, after a Master granted the motion, Somportex appealed. The appeal was denied after hearing before a single judge, but the Court of Appeal, reversing the decision of the Master, held that the appearance was unconditional and that the submission to the jurisdiction by Philadelphia was, therefore, effective.[3] But the court let stand "the original order which was made by the master on Nov. 13 dismissing the application to set aside. The writ therefore will stand. On the other hand, if the American company would wish to appeal from the order of Nov. 13, I see no reason why the time should not be extended and they can argue that matter out at a later stage if they should so wish."[4]

Thereafter, Philadelphia made a calculated decision: it decided to do nothing. It neither asked for an extension of time

fendants on or about 17th December 1966;

(2) alternatively that if there was such an agreement:—

(a) it was not made within the jurisdiction of this honourable Court; or

(b) it was not made by or through an agent trading or residing within the jurisdiction on behalf of the Defendants a principal trading or residing out of the jurisdiction; or

(c) it was not by its terms or by implication to be governed by English law;

(3) in the further alternative that if there was such an agreement there has been no breach of the said agreement committed within the jurisdiction of this honourable court;  .  .  .

3. Somportex v. Philadelphia Chewing Gum [1968], 3 All.E.R. 26, 29, Lord Denning:

In order to decide the point, I think that one has to put oneself in the position of the American company and their advisers when faced with this notice of the writ. They could have not entered an appearance at all, in which case by the law of Pennsylvania they would not be bound by any judgment. Instead of doing that, however, after consultation with a distinguished firm of lawyers in the city of London they decided to enter a conditional appearance. That was a very important step for them to take (especially if they had assets in England or were likely to bring assets into England) because it was an essential way of defending their own position. After all, if they did not enter an appearance at all, and in consequence the English courts gave judgment against them in default of appearance, that judgment could be executed against them in England in respect of assets in England. In order to guard against that eventuality, they had first to enter a conditional appearance here, then argue whether it was within the jurisdiction of the court or not. If it was outside the jurisdiction, all well and good. The writ would be set aside. They would go away free. If it was within the jurisdiction, however, their appearance became unconditional and they could fight out the case on the merits. In these circumstances it seems to me that they were very wise to enter a conditional appearance. It was a step which would be advised by any competent lawyer if there was a likelihood that assets would then or afterwards come into England.

We have, therefore, a wise course of action deliberately decided on by eminent firms in England and the United States after consulation, and I do not think that they should be allowed now to go back on it. It must be remembered that, on the faith of this entry of appearance, the English company have altered their position. They have not gone to the United States, as they might have done, and taken steps there against the American company. They have remained in this country and pursued the action here—on the faith that there was a conditional appearance entered which would become unconditional unless it was duly set aside. In the circumstances, I do not think that we should give leave to withdraw the appearance.

4. *Ibid.* 3 All.E.R. at 29, 30.

nor attempted in any way to proceed with an appeal from the Master's order dismissing its application to set aside the Writ. Instead, it directed its English solicitors to withdraw from the case. There being no appeal, the Master's order became final.

Somportex then filed a Statement of Claim which was duly served in accordance with English Court rules. In addition, by separate letter, it informed Philadelphia of the significance and effect of the pleading, the procedural posture of the case, and its intended course of action.[5]

Philadelphia persisted in its course of inaction; it failed to file a defense. Somportex obtained a default judgment against it in the Queen's Bench Division of the High Court of Justice in England for the sum of £39,562.10.10 (approximately $94,000.00). The award reflected some $45,000.00 for loss of profit; $46,000.00 for loss of good will and $2,500.00 for costs, including attorneys' fees.

Thereafter, Somportex filed a diversity action in the court below, seeking to enforce the foreign judgment, and attached to the complaint a certified transcript of the English proceeding. The district court granted two motions which gave rise to this appeal: it dismissed the third-party complaints for failure to state a proper claim under F.R.C.P. 14; and it granted plaintiff's motion for summary judgment, F.R.C.P. 56(a).

We will quickly dispose of the third-party matter. We perceive our scope of review to be limited to an inquiry whether the district court abused its discretion in refusing impleader.[6] At issue here was not the alleged contract to peddle Tarzan chewing gum in England. Had such been the case, Philadelphia's third-party arguments would have been persuasive. The complaints might have met the liability test and "transaction or occurrence" requirement of F.R.C.P. 14(a).[7] But the transaction at issue here is not the contract; it is the English judgment. And neither

5. * * *

Accompanying this letter is the Plaintiff's Statement of Claim the service of which upon yourselves is the next step in the action after the entry of your appearance. You will observe that it contains in numbered paragraphs the material facts relied on by our Clients in support of their claim against you. Under the Rules of the Supreme Court in England, you may serve upon us as Solicitors for the Plaintiffs your Defence (should you consider that you have one) in writing within 14 days from the date of service upon you of the Statement of Claim. In view of the fact that Messrs. Clifford-Turner & Company no longer appear to be acting on your behalf, we recognise that you may have some difficulty in preparing and serving your Defence within that time. Accordingly, we are prepared voluntarily to give you an extension of time for the service of your Defence, namely a further 14 days, so that you may have 28 days in all for this purpose. Should you fail to serve your Defence before the expiry of this extended period, the Plaintiffs will proceed to obtain judgment against you in default of Defence. If however you do enter a Defence, the action will then proceed to a trial at which you will have an opportunity of contesting fully and fairly the merits of the Plaintiff's claim.

We have thought it right to draw your attention to the points mentioned above so that you may fully understand your present position in relation to the action now being prosecuted against you. Further we feel bound to inform you that in the event of judgment being obtained against you, the Plaintiffs will seek to enforce the judgment against you through the appropriate Court in Pennsylvania.

6. Presumably a court, called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications of the case.

Wright, Federal Courts, § 76. at 333.

7. F.R.C.P. 14 provides:

(a) *When Defendant may Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to*

third-party defendant was involved in or notified of the proceedings in the English courts. Accordingly, we find no abuse of discretion in the district court's dismissal of the third-party complaints.

■ Appellant presents a cluster of contentions supporting its major thesis that we should not extend hospitality to the English judgment. First, it contends, and we agree, that because our jurisdiction is based solely on diversity, "the law to be applied . . . is the law of the state," in this case, Pennsylvania law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Svenska Handelsbanken v. Carlson, 258 F.Supp. 448 (D.Mass.1966).

■ Pennsylvania distinguishes between judgments obtained in the courts of her sister states, which are entitled to full faith and credit, and those of foreign courts, which are subject to principles of comity. In re Christoff's Estate, 411 Pa. 419, 192 A.2d 737, cert. denied, 375 U.S. 965, 84 S.Ct. 483, 11 L.Ed.2d 414 (1964).

■ Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an im-

perative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.[8] See Orfield and Re, International Law, Note, "Recognition and Enforcement of Foreign Judgments and Awards," pp. 736–737.

Thus, the court in *Christoff, supra,* 192 A.2d at 739, acknowledged the governing standard enunciated in Hilton v. Guyot, *supra,* 159 U.S. at 205, 16 S.Ct. at 159:

When an action is brought in a court of this country by a citizen of a foreign country against one of our own citizens . . . and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, un-

---

*him for all or part of the plaintiff's claim against him. . . .* The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence *that is the subject matter of the plaintiff's claim against the third-party plaintiff.* . . .

Emphasis supplied.

8. In Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Supreme Court spoke of the likelihood of reciprocity as a condition precedent to the recognition of comity. The doctrine has received no more than desultory acknowledgement. Direction der Disconto-Gesellschaft v. United States Steel Corp., 300 F. 741, 747 (S.D.N.Y.1921); see also, Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 411, 84 S.Ct. 923,

11 L.Ed.2d 804 (1963) (dictum). It has been rejected by the courts of New York, Johnston v. Compagnie Generale Transatlantique, 242 N.Y. 381, 152 N.E. 121 (N.Y.1926), and by statute in California. See Reese, "The Status in this Country of Judgments Rendered Abroad," 50 Col.L.Rev. 783, 790–93 (1950).

We agree with the district court that this issue of the enforceability of foreign judgments has not frequently been litigated in Pennsylvania, and the Court has not been cited to, nor has independent examination revealed any Pennsylvania cases which even intimate that a finding of reciprocity is an essential precondition to their enforcing a foreign judgment.

Somportex Limited v. Philadelphia Chewing Gum Corp., 318 F.Supp. 161, 168 (E.D.Pa.1970).

less some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.

It is by this standard, therefore, that appellant's arguments must be measured.

■ Appellant's contention that the district court failed to make an independent examination of the factual and legal basis of the jurisdiction of the English Court at once argues too much and says too little. The reality is that the court did examine the legal basis of asserted jurisdiction and decided the issue adversely to appellant.

Indeed, we do not believe it was necessary for the court below to reach the question of whether the factual complex of the contractual dispute permitted extraterritorial service under the English long-arm statute. In its opinion denying leave of defense counsel to withdraw, the Court of Appeal specifically gave Philadelphia the opportunity to have the factual issue tested before the courts; moreover, Philadelphia was allocated additional time to do just that. Lord Denning said: ". . . They can argue that matter out at a later stage if they should so wish." Three months went by with no activity forthcoming and then, as described by the district court, "[d]uring this three month period, defendant changed its strategy and, not wishing to do anything which might result in its submitting to the English Court's jurisdiction, decided to withdraw its appearance altogether." Under these circumstances, we hold that defendant cannot choose its forum to test the factual basis of jurisdiction. It was given, and it waived, the opportunity of making the adequate presentation in the English Court.[9]

■ Additionally, appellant attacks the English practice wherein a condi-

---

9. In Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931), a federal district court defendant, who had unsuccessfully conditionally appeared and then, like appellant here, failed either to file a defense or to appeal from the default judgment entered on the merits, was sued in another district court for enforcement of the default judgment. The Court emphasized that "the full faith and credit required by [Article IV, Section 1] is not involved, since neither of the courts was a state court." 283 U.S. at 524, 51 S.Ct. at 517. The Court then declared:

"The special appearance gives point to the fact that the respondent entered the Missouri court for the very purpose of litigating the question of jurisdiction over its person. It had the election not to appear at all. If, in the absence of appearance, the court had proceeded to judgment, and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction. . . . It had also the right to appeal from the decision of the Missouri District Court, as is shown by Harkness v. Hyde, supra, [98 U.S. 476] and the other authorities cited. It elected to follow neither of those courses, but, after having been defeated upon full hearing in its contention as to jurisdiction, it took no further steps, and the judgment in question resulted.

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause."

283 U.S. at 525–526, 51 S.Ct. at 518.

The *Baldwin* principle was reaffirmed in Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). See also, American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932), in which Mr. Justice Brandeis stated that "the principles of *res judicata* apply to questions of jurisdiction as well as to other issues."

tional appearance attacking jurisdiction may, by court decision, be converted into an unconditional one. It cannot effectively argue that this practice constitutes "some special ground . . . for impeaching the judgment," as to render the English judgment unwelcome in Pennsylvania under principles of international law and comity because it was obtained by procedures contrary or prejudicial to the host state. The English practice in this respect is identical to that set forth in both the Federal and Pennsylvania rules of civil procedure.[10] F.R.C.P. 12(b) (2) provides the vehicle for attacking jurisdiction over the person, and, in Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir. 1944), we said that Rule 12 "has abolished for the federal

courts the age-old distinction between general and special appearances."[11] Similarly, a conditional or "de bene esse" appearance no longer exists in Pennsylvania.[12] Monaco v. Montgomery Cab Co., 417 Pa. 135, 208 A.2d 252 (1965), Pa.R.C.P. 1451(a) (7). A challenge to jurisdiction must be asserted there by a preliminary objection raising a question of jurisdiction. Pa.R.C.P. 1017(b) (1).

Thus, we will not disturb the English Court's adjudication. That the English judgment was obtained by appellant's default instead of through an adversary proceeding does not dilute its efficacy. In the absence of fraud or collusion, a default judgment is as conclusive an adjudication between the parties as when rendered after answer and complete contest in the open courtroom.

10. "The time-honored recital of a 'special appearance' has no place under the rules." Wright, Federal Courts, § 66 at 279.

11. The Supreme Court has upheld the constitutionality of Texas statutes providing that a special appearance for a nonresident defendant for the purpose of pleading to the jurisdiction is a voluntary appearance which brings the defendant into court for all purposes. York v. Texas, 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890). See Cound, Friedenthal, and Miller, Civil Procedure, Cases and Materials, "Chalenging the Jurisdiction of the Court," pp. 150–57. See also Des Moines Navigation & R. Co. v. Iowa Homestead Co., 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 202 (1887).

12. Appellant attaches much significance to the July 14, 1967, letter of its English solicitors, supra, wherein its American counsel were told: "we will enter a conditional Appearance to the Writ in behalf of Philadelphia Chewing Gum Corporation in order to preserve the status quo." From it that it builds the argument that it cannot be said to have ever consented to have entered an appearance which would have subjected it to the court's jurisdiction. In support thereof it contends that it and its American counsel took the phrase "conditional appearance" to mean de bene esse. The argument is totally without merit. We can perceive of no

principle of law which removes one from the reach of a court's jurisdiction because of misunderstanding or misimpression by one counsel of advice from privately retained co-counsel. Moreover, as heretofore observed, the conditional appearance was described by Lord Denning in Somportex v. Philadelphia Chewing Gum, 3 All.E.R. 26, 27:

"the memorandum of conditional appearance was stamped with the usual formula: 'This appearance is to stand as unconditional unless the defendant applies within fourteen days to set aside the writ and service thereof and obtains an order to that effect.'"

It can also be said that appellant may be estopped from advancing this argument before this court. Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3rd Cir. 1953). In the district court, its counsel stated:

"The English Court decided that a conditional appearance was a general appearance. We are not asking this court to redetermine that issue. We are saying that even assuming the English Court was correct, that judgment is not entitled to comity; no cases support it. Thank you."

THE COURT: Now do you agree that the issue as to mistake in the law was litigated in the English Courts?

COUNSEL: Yes, sir.

Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947); Third National Bank v. Atlantic City, 130 F. 751, 754 (3d Cir. 1904); Lockhart v. Mercer Tube and Mfg. Co., 53 F.Supp. 301 (D. Del.1963).[13] The polestar is whether a reasonable method of notification is employed and reasonable opportunity to be heard is afforded to the person affected. Restatement (Second) Conflict of Laws, § 92 (Proposed Final Draft), 1967.

■■ English law permits recovery, as compensatory damages in breach of contract, of items reflecting loss of good will and costs, including attorneys' fees. These two items formed substantial portions of the English judgment. Because they are not recoverable under Pennsylvania law,[14] appellant would have the foreign judgment declared unenforceable because it constitutes an ". . . action on the foreign claim [which] could not have been maintained because contrary to the public policy of the forum," citing Restatement, Conflict of Laws, § 445.[15] We are satisfied with the district court's disposition of this argument:

The Court finds that . . . while Pennsylvania may not agree

that these elements should be included in damages for breach of contract, the variance with Pennsylvania law is not such that the enforcement "tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy." Goodyear v. Brown, 155 Pa. 514, 518, 26 A. 665, 666 (1893).

Somportex Limited v. Philadelphia Chewing Gum Corp., 318 F.Supp. 161, 169 (E.D.Pa.1970).

■■ Finally, appellant contends that since "it maintains no office or employee in England and transacts no business within the country" there were no insufficient contacts there to meet the due process tests of International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1965). It argues that, at best, "the only contact Philadelphia had with England was the negotiations allegedly conducted by an independent New York exporter by letter,

13. "A judgment of a court having jurisdiction of the parties and the subject matter operates as res adjudicata, in the absence of fraud or collusion, even if obtained upon a default." Riehle v. Margolies, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929).

Throughout the limited number of cases which have permitted a collateral attack on a default judgment entered in another court runs the recurring theme of "fraud" or "excusable neglect." Butner v. Neustadter, 324 F.2d 783 (9th Cir. 1963); cf., Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949). See Carrington, Civil Procedure, "Default Judgments," pp. 786–90.

14. Loss of good will is not recoverable under Pennsylvania law. Harry Rubin & Sons, Inc. v. Consolidated Pipe Co., 396 Pa. 506, 153 A.2d 472 (1959); the same is true of attorneys' fees, Shapiro

v. Magaziner, 418 Pa. 278, 210 A.2d 890 (1965).

15. The limited scope of public policy as a controlling principle of Pennsylvania jurisprudence was underscored by Justice Stern in Mamlin v. Genoe, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941):

"It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. . . . Familiar illustrations are those involving unreasonable restraints of marriage or of trade, collusive arrangements for obtaining divorces, suppression of bids for public contracts, interference with freedom of conscience or religion. . . . Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision."

telephone and telegram to sell Philadelphia's products in England." In Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), Chief Justice Warren said: "The application of [the requirement of contact] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protection of its laws." We have concluded that whether the New York exporter was an independent contractor or Philadelphia's agent was a matter to be resolved by the English Court. For the purpose of the constitutional argument, we must assume the proper agency relationship. So construed, we find his activity would constitute the "quality and nature of the defendant's activity" similar to that of the defendant in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), there held to satisfy due process requirements.[16]

For the reasons heretofore rehearsed we will not disturb the English Court's adjudication of jurisdiction; we have deemed as irrelevant the default nature of the judgment; we have concluded that the English compensatory damage items do not offend Pennsylvania public policy; and hold that the English procedure comports with our standards of due process.

In sum, we find that the English proceedings met all the tests enunciated in *Christoff, supra.* We are not persuaded that appellant met its burden of showing that the British "decree is so palpably tainted by fraud or prejudice as to outrage our sense of justice, or [that] the process of the foreign tribunal was invoked to achieve a result contrary to our laws of public policy or to circumvent our laws or public policy." *Christoff, supra,* 192 A.2d at 739.

The judgment of the district court will be affirmed.

---

16. See also Penn v. Linden Crane Co., 326 F.Supp. 995 (S.D.Pa.1971).