Jose Vincente SANGIOVANNI HERNAN-DEZ et al., Plaintiffs-Appellees,

v.

DOMINICANA de AVIACION, C. POR A., et al., Defendants-Appellants.

No. 76–1275.

United States Court of Appeals, First Circuit.

Argued Feb. 9, 1977.

Decided June 15, 1977.

Alberto Pico, San Juan, P. R., with whom Brown, Newsom & Cordova, San Juan, P. R., was on brief, for defendants-appellants.

Wally De La Rosa Vidal, Hato Rey, P. R., with whom Jorge J. Oppenheimer Mendez, Santurce, P. R., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, VAN OOSTERHOUT,* and INGRAHAM,** Senior Circuit Judges.

* Of the Eighth Circuit, sitting by designation.

VAN OOSTERHOUT, Senior Circuit Judge.

This action was brought by Jose Vincente Sangiovanni Hernandez, individually and by his mother Nilsa Hernandez Vinda de Sangiovanni, to recover damages flowing to Jose by reason of the death of his father, Jose Vincente Sangiovanni Simo, in a fatal air crash alleged to have been caused by the negligence of the defendants. Defendants moved to dismiss on the ground that an action asserting the same claim against the same defendants was instituted in the courts of the Dominican Republic and was subsequently compromised and settled in accordance with Dominican law, and that hence the present action is barred by res judicata.

An order was entered by the trial court permitting an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). Upon defendants' application this court on March 16, 1976, authorized this interlocutory appeal from the memorandum and order entered on October 14, 1975, as amended by order dated February 25, 1976, which denied defendants' motion to dismiss.

We will summarize the relevant facts. On February 15, 1970, an aircraft of defendant Dominicana de Aviacion crashed in Santo Domingo, Dominican Republic, when taking off on a flight from that city to San Juan, Puerto Rico. The 106 occupants of the plane, including the father of the plaintiff, died as a result thereof. At the time of his death the father, as well as his wife Nilsa and their only child, the plaintiff then 14 years of age, were all citizens of the Dominican Republic. The family had moved to and were living in Puerto Rico at the time of the crash.

Several months after the accident, the plaintiff's mother, Nilsa, went to Santo Domingo and there with the approval of the Family Council filed an action on August 11, 1970, *pro se* and as mother with *patria potestas* over her minor son, for damages for the death of plaintiff's father. The decedent's parents were joined as plaintiffs and all were represented by a competent Dominican attorney. After the action was

** Of the Fifth Circuit, sitting by designation.

filed the following was the sequence of events leading to a settlement of the claim:

Settlement conversations were carried on which produced a proposed settlement of Forty Thousand Dollars. Since Sangiovanni was a minor, a petition was filed before the Solicitor General of the National District for the appointment of three outside attorneys to advise and render an opinion on the proposed settlement, as provided in Article 467 of the Civil Code of the Republic. The Solicitor General by order dated October 21, 1970, designated Doctors Jose Maria Diaz Alles, Leo F. Nenita Cuello and Juan Pablo Perez Espinosa as advising attorneys. The Family Council was convened, composed of three relatives of the minor plaintiff on the father's side and three relatives on the mother's side. The Family Council was presided by Doctor Susana Hahn de Fernandez, Justice of the Peace, Fourth Circumscription of the National District. The Council appointed Mr. Moises Brea Mena, a relative of the decedent on the mother's side, as guardian to represent the minor's interests opposed to those of the tutor. The members of the Family Council deliberated on whether to authorize the proposed settlement and discussed the same. After considering the favorable report issued on October 26, 1970, by the three attorneys designated by the Solicitor General, they authorized Nilsa on November 13, 1970, to go ahead with the settlement. The Magistrate-Solicitor General of the National District rendered an independent opinion in favor of the settlement.

Plaintiffs' attorney filed an application for approval of the settlement with a competent tribunal authorized by Dominican statute—the Court of First Instance of the National District—including a transcript of the Family Council proceedings and its recommendation of a $40,000 settlement. He also filed the recommendation for the approval of the settlement made by three attorneys appointed in an advisory capacity, pursuant to Dominican law. The court, after incorporation of the Family Council proceedings and the report of the appointed attorneys in his order, goes on to say:

AFTER STUDYING THE CASE:

CONSIDERING, that the tutor being it the father or mother of the minor, can not apply for loans on account of the minor, nor to transfer, nor mortgage his real estates, nor to dispose of them without authorization of the Family Council, which authorization shall not be executed until after request and authorization of the competent Court, which will decide after decision of the Prosecuting Attorney in Chambers Council:

CONSIDERING, that the formalities required by law have been met in the present case, it therefore proceeds to Confirm the decision of the above mentioned Family Council;—

For Said Reasons and in view of Articles 457, 458 and 459 of the Civil Code.—

THE CIVIL AND COMMERCIAL HOUSE of the Second Circumscription of the First Instance of the National District, Administering Justice.—

DECREES:

ONLY: CONFIRMS, to be executed as provided the CONSTITUTION AND DELIBERATION ACT OF THE FAMILY COUNCIL of minor JOSE VINCENTE SANGIOVANNI HERNANDEZ, dated November 12, of the year 1970, before the Justice of the Peace of the Fourth Circumscription of the National District, as transcribed above:—

IT IS ORDERED, ADJUDGED AND DECREED.—

(sgd) DR. GREGORIO POLIXENO PADRON S., Judge—President.

The issue presented by this appeal as stated by the trial court is whether plaintiffs' action is barred by the res judicata effect of the settlement of the damage action by the plaintiffs on the same cause of action against the same defendants in the courts of the Dominican Republic.

It is undisputed that the cause of action commenced and settled in Santo Domingo with respect to the plaintiffs is the same cause of action here presented. The trial court properly determined that the legal proceedings in Santo Domingo were con-

ducted in good faith and that it was in full compliance with Dominican standards of justice. The court further determined that the Dominican court had no obligation to apply the standards of any legal system other than its own.

Plaintiffs chose the Dominican court as the place to commence and prosecute the prior action and without question had significant contacts with Santo Domingo. Without question the Dominican court had jurisdiction. No fraud or coercion in obtaining the settlement has been alleged or established.

■ The issue of whether a foreign judgment will be enforced by a federal court having jurisdiction by means of diversity of citizenship is governed by the laws of the state where the federal court is located. *Somportex Limited v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).

■ We agree with the applicable background stated by the trial court as follows:

There is little question that, under the laws of Puerto Rico and as a general principle of law, a judgment entered upon a settlement of compromise generally is a final determination and res judicata of the merits. 31 L.P.R.A. § 4827 (1968); 1 B Moore's Federal Practice Par. 0.409(5).

\* \* \* \* \* \*

Unless bound by treaties to the contrary, the courts of no nation are obliged to recognize and respect the judgments of the courts of another nation. Nevertheless, whether motivated by a desire for reciprocal treatment of American judgments abroad or the basic policies behind the doctrine of res judicata, that there must be some end to litigation, *see* 1B Moore's Federal Practice Par. 0.405(1), many American courts follow the practice of recognizing foreign judgments unless there are clear reasons not to do so in a particular case. *See generally,* Reese, "The Status in this Country of Judgments Rendered Abroad", 50 Colum.L.

Rev. 783 (1950). In the words of the Court of Appeals for the Third Circuit:

"Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. . . . Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).

One occasion for rejecting the principle of res judicata in relation to foreign judgments is where recognition of a foreign judgment would be contrary to public policy:

"It is a well-established rule of law that a court will not enforce a foreign judgment, be it of a sister state or foreign nation, if to do so would violate the forum's public policy." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 318 F.Supp. 161, 168 (E.D.Pa. 1970), *aff'd* 453 F.2d 435, *supra.*

The trial court's refusal to give the Dominican proceedings res judicata effect is upon the basis that the approval of the settlement in the Dominican Republic violated the strong public policy of Puerto Rico for protecting the interest of minors. The court points out:

In spite of these measures taken in the Dominican Republic to safeguard the interests of the minor plaintiff, this Court concludes that they are not sufficient to satisfy the standards established under the laws of Puerto Rico. For as noted above, these standards are quite strict.

The basis of the trial court's determination that it did not meet Puerto Rican standards for protection of minors is thus stated:

It appears that to satisfy the requirements of Puerto Rican law in approving settlement agreements concerning minors, a court must make *its own* findings and not rely primarily on the recommendations of the minor's counsel. There is

no indication in the opinion of the Dominican Court in authorizing the settlement that it followed this procedure. To the contrary, the record indicates that the Court's action was based almost exclusively on the recommendations of the Family Council and the three appointed lawyers, and, in fact, the decision of the Family Council itself appears also to be based on the advice of counsel and not on independent evaluation of the merits of the settlement.

The Dominican court sets forth in detail the proceedings of the Family Council resulting in the unanimous approval of the settlement and the opinion of the independent advisory attorneys favoring the settlement. While it is not clear that the court itself conducted yet another independent review of the sort a Puerto Rican court would undertake, we do not think that this difference in method goes to the heart of Puerto Rico's policy. The fundamental concern is that the settlement be evaluated impartially—that is, considering only the minor's interests, independent of the possibly conflicting interests of his parent or guardian. As the district court observed, the Dominican procedure was certainly more than a "rubber stamp" of the proposed agreement: the settlement was "reviewed and approved by two bodies, one judicial and the other quasi-judicial, charged with protection of the minor plaintiff's interests." Given this elaborate system of review, it seems quite insignificant that the impartial evaluation may not have been made by the court that ultimately approved the settlement. We believe that the public policy of the Dominican Republic to protect the rights of minors is consistent with that of Puerto Rico and that the manner in which the settlement was approved by the Dominican court in no way violated the public policy of Puerto Rico.

In *Hilton v. Guyot,* 159 U.S. 113, 205–06, 16 S.Ct. 139, 159–160, 40 L.Ed. 95 (1895), the Court holds:

When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.

The law as just stated is quoted and followed in *Somportex Ltd. v. Philadelphia Chewing Gum Corp., supra,* 453 F.2d at 440–41.

The trial court calls attention to the fact that the settlement approved by the Dominican court involved complaints of the paternal grandparents and the mother of the minor, as well as the claims of the minor, for a lump sum of $40,000. Such were the terms of the settlement submitted to and approved by the court. The terms of the settlement were fully met by the defendants. The paternal grandparents and Nilsa, the mother with *patria potestas,* signed the release. The $40,000 was paid to Nilsa. Nilsa, in response to questions by the court, testified as follows:

The Court: Madam, do you still have this money? (Through an interpreter.)

Mrs. Sangiovanni: No.

The Court: Where is the money now?

Mrs. Sangiovanni: I bought a home.

The Court: Where is this house?

Mrs. Sangiovanni: In Santo Domingo.

The Court: In whose name is this house?

Mrs. Sangiovanni: In my name.

The defendants in good faith entered into and fully complied with the settlement ap-

proved by the Dominican court. If the mother does not properly account to the son for his property she holds as surviving parent and natural guardian, appropriate proceedings are available for the son's protection. The son, who was fourteen years of age, testified he had no knowledge of the settlement. The credibility of such testimony, as indicated by the trial court, is questionable. In any event, nothing in either Puerto Rican or Dominican law requires the consent of a minor to a settlement.

The order denying the motion to dismiss on the grounds of res judicata is reversed. The case is remanded with direction to dismiss the complaint.