## Havice v. Havice

*John R. Moore*, for petitioner.
*Edward G. Mihalik, Jr.*, for respondent.

WILSON, *P.J.*, January 10, 1980—The single issue before the court is the question of the jurisdiction of the court to modify or disregard a decree by an English court awarding permanent custody of two children to their natural mother.

John Havice has petitioned the court to award to him the permanent custody of his minor children, even though a British court previously awarded permanent custody to their mother and granted him temporary custody to August 26, 1979. This decree of permanent custody was a by-product of divorce proceedings instituted before the British court, which court on November 7, 1978 terminated the marriage of John Havice to Maureen Ann Havice and the same day awarded the permanent

custody of the children born of the marriage to the mother.

Whether this court can entertain the petition and grant petitioner relief must, of course, turn on the effect of the previous foreign court decree as being a binding decree upon the court and the extent to which the court can determine the disposition of children who are simply within the state, neither abandoned nor abused, in keeping with the state's parens patriae concern for their welfare, as now defined by the Uniform Child Custody Jurisdiction Act of June 30, 1977, P.L. 29, sec. 4, 11 P.S. §2304(b).

If there be a duty imposed upon a domestic court to recognize the decree of a foreign court, the bond which unites the two is forged upon the anvil of the comity of nations or comitas gentium. By this principle, courts of the United States, as well as the courts of this Commonwealth, have recognized decrees of foreign countries even in circumstances where the judicial system of the foreign country vastly varies from that of our own. See Gross v. Marchlewski, 8 F. Supp. 85 (S.D.N.Y. 1933); Perrin v. Perrin, 408 F. 2d 107 (3d Cir. 1969); Somportex Limited v. Philadelphia Chewing Gum Corp., 453 F. 2d 435 (3d Cir. 1971), Sumerbank v. Turkdogan, 62 D. & C. 2d 615 (1972).

This is, of course, not to say that recognition of judgments from other nations are automatically received and given full effect. The principle of comity is granted by the court in its discretion and under what must be considered to be appropriate circumstances. See Christoff Estate, 411 Pa. 419, 192 A. 2d 737 (1963).

This is adequately illustrated in cases involving child custody. It is an accepted principle of law that

comity does not bind the domestic court but requires a willing recognition. Where the health and welfare of the child is of critical concern, the domestic court will not hesitate to adjudicate independently of any prior determinations by a foreign country: Application of Lang, 9 A.D. 2d 401, 193 N.Y.S. 2d 763 (1959); In Re Gi, 134 Cal. App. 2d 479, 286 P. 2d 364 (1955); Application of Pelaez, 22 Misc. 2d 245, 198 N.Y.S. 2d 242 (1959); Fantony v. Fantony, 36 N.J.Super. 375, 115 A. 2d 610 (1955).

However, the circumstances in which a foreign decision may be ignored must be considered to be extraordinary in the light of the consistent recognition by many different courts of the custody decrees of foreign countries. See Morrill v. Morrill, 83 Conn. 479, 77 Atl. 1 (1910); Adamsen v. Adamsen, 151 Conn. 172, 195 A. 2d 418 (1963); Hachez v. Hachez, 124 N.J.Eq. 442, 1 A. 2d 845 (1938); Levicky v. Levicky, 49 N.J.Super. 562, 140 A. 2d 534 (1958); Baylek v. Baylek, 25 Misc. 2d 391, 206 N.Y.S. 2d 359 (1960); Re Vanderborght, 57 Ohio L.Abs. 143, 91 N.E. 2d 47 (1950); See also 35 A.L.R. 3d Annotation, Extraterritorial Effect of Award of Child Custody, §§9 and 10(a).

The underlying purpose for adhering to the conclusive effect of a foreign decree in custody cases has been to promote the best interest of the child by giving the forum with which the child and his family have had the closest connection, and where the child's care, protection, training, and personal relations are more readily determinable, make the custody decision. In addition, courts recognize the problems created by inconsistent custody decrees, which create instability in the child's development and encourage forum shopping, as well as legalized abduction of children by their parents. These are

genuine concerns shared by all jurisdictions. Therefore, there exists in this area all the more reason for the acceptance of the principle that comity should probably function in the same manner in which states give full faith and credit to each other's decisions, even though in point of fact the states are compelled to do so by the Constitution of the United States.

However that may be, it would now seem that this Commonwealth by the provisions of the Uniform Child Custody Jurisdiction Act has adopted the principle of comity to child custody decrees of courts of a foreign country. Section 24 of the act, sec. 24, 11 P.S. §2324, provides:

"The general policies of this act extend to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."

Although the statute in many ways raises more questions than it answers, it makes abundantly clear that the overall objective of the act is to recognize and provide domestic enforcement of custody decrees of other nations. For as expressed by the act itself, the general objectives are to promote finality in custody litigation, insure the stability of the child's home environment, provide for a fully informed judgment by the appropriate court, avoid jurisdictional conflicts between states, and provide for recognition of out-of-state custody decrees. See section 2 of the Uniform Child Custody Jurisdiction

Act, 11 P.S. §2302, as well as 51 Temple L.Q. 139 (1978).

Although the act directly addresses states, territories, and possessions of the United States, section 24 clearly expands its application to the recognition and enforcement of custody decrees of courts of foreign countries, for it provides that: "The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees . . . rendered by appropriate authorities of other nations. . . ." In addition, however, this section also recognizes the prevailing case law which provides restrictions upon the limitless recognition of foreign decrees by directing recognition only where reasonable notice and the opportunity to be heard have been extended to affected persons.

Notice and an opportunity to be heard have always been preconditions to the application of constitutional full faith and credit between states as well as to the application of the principle of comity to decrees of a foreign country. See Thompson v. Yarnell, 313 Pa. 244, 169 Atl. 370 (1933); In re Morrell, 118 Ohio App. 237, 186 N.E. 2d 761 (1962); Culpepper v. Martins, 96 R.I. 328, 191 A. 2d 285 (1963); Re Rankin, 76 Wash. 2d 692, 458 P. 2d 176 (1969). These cases for the most part require that proper notice and an opportunity to be heard be afforded the parents in order for the decree to be recognized.

Thus it would seem as though the child's right to be notified and heard is not critical to a consideration of the recognition of foreign decrees. This is not to say that the cases do not consider the child, for it is the welfare of the child that forms the very basis for courts, unwilling to adopt the principle of full

faith and credit or comity, to ignore a foreign state or country custody decree. See In Re Kyle, 77 Cal. App. 2d 634, 176 P. 2d 96 (1947); Bachman v. Mejias, 1 N.Y. 2d 575, 154 N.Y.S. 2d 903, 136 N.E. 2d 866 (1956); Com. ex rel. Thomas v. Gillard, 203 Pa. Superior Ct. 95, 198 A. 2d 377 (1964). Notwithstanding, it is one thing to consider the child's welfare, and another to require that the child be given notice and an opportunity to be heard. In fact, it is the case law of this Commonwealth that although the personal preference of a child expressed at a custody hearing is a matter to be considered in awarding custody, it is by no means compelling nor should it control final placement. See Strapple v. Strapple, 263 Pa. Superior Ct. 187, 397 A. 2d 809 (1979); Tomlinson v. Tomlinson, 248 Pa. Superior Ct. 196, 374 A. 2d 1386 (1977).

Section 24 of the act does not specifically identify the parties to whom notice must be given in restricting the recognition of foreign decrees, as the language of the section simply provides that notice and an opportunity to be heard must be given to all affected persons. Certainly, in keeping with the case law, the parents would be considered affected persons.

Moreover, section 5 of the act, 11 P.S. §2305, provides specifically that before making a decree in an award of custody, reasonable notice and an opportunity to be heard must have been given to any parent whose parental rights had not been previously terminated. The section provides no requirement that notice and an opportunity to be heard be given the child, for it states: "Before making a decree under this act, reasonable notice and opportunity to be heard shall be given to the contestants,

any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. . . ."

Thus it would appear that the child or children are not affected persons within the meaning of the act. In consequence, if in the instant case there has been proper notice and an opportunity to be heard given the petitioner, the British court order should be recognized as there is no contention that the children are either abandoned or abused.

In the past, based upon the principle of parens patriae, the mere presence of the child within the state was sufficient to establish jurisdiction: Irizarry Appeal, 195 Pa. Superior Ct. 104, 169 A. 2d 307 (1961); Com. ex rel. Scholtes v. Scholtes, 187 Pa. Superior Ct. 22, 142 A. 2d 345 (1958); Com. ex rel. Graham v. Graham, 367 Pa. 553, 80 A. 2d 829 (1951); Com. ex rel. Rogers v. Darven, 298 Pa. 416, 148 Atl. 524 (1930).

With the advent of the Uniform Child Custody Jurisdiction Act, and the emphasis placed upon restricting jurisdiction as expressed in In re Sagan, 261 Pa. Superior Ct. 384, 390, 396 A. 2d 450, 453 (1978), the mere presence of the child within the state is no longer sufficient to establish jurisdiction. In point of fact, Sagan speaks to the instant case in the words of Judge Robert Lee Jacobs: "Consequently, we hold that unless there is evidence that a minor child has been abandoned or physically abused, where another state's court has awarded custody to the parent domiciled in that other state, and that parent has allowed the child to visit temporarily with the other parent in Pennsylvania, the child is not a resident of Pennsylvania, nor does Pennsylvania have a sufficient interest in

that child's well being to merit the assumption of jurisdiction by its courts to relitigate the matter of custody."

Petitioner received proper notice and had an opportunity to be heard when the British court determined custody. In these circumstances it is difficult to conclude other than that this court has no jurisdiction to relitigate the custody of these children in this case and should recognize the decree of the English court, as it is required to do by the provisions of the Uniform Child Custody Jurisdiction Act, and as it is inclined to do by the dictates of the principles of comity.

## ORDER

And now, January 10, 1980, it is determined that this court has no jurisdiction at this time to change the custody award as decreed by the Court of Bedford County, England, therefore, it is ordered that plaintiff's petition be and is hereby dismissed.