482 A.2d 563

**Zdenka DRAKULICH**

v.

**Nikola DRAKULICH, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1984.

Filed Sept. 21, 1984.

Malcolm B. Jacobson, Norristown, for appellant.

Daniel C. Barrish, Norristown, for appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

BROSKY, Judge:

This appeal is from the dismissal of appellant's petition to reduce support payments. Appellant argues that the changed circumstances justifying the sought for reduction were present in the form of an order of a Yugoslavian court compelling him to pay $600 a month support to his son and mother. The court below concluded that this order had been obtained by appellant for the fraudulent purpose of appearing to have greater financial obligations than he does, in fact, have. We do not review that conclusion directly. For even assuming, *arguendo*, that the Yugoslavian support order was not collusively obtained, appellant's economic circumstances are not so changed that a

reduction in support payments would be mandated. Affirmed.

\* \* \*

The relevant procedural history starts with an order of the Montgomery County Court of Common Pleas on March 18, 1981 directing that payments of $100 a week be made by appellant to appellee. On July 25, 1981, a Yugoslavian court in Belgrade entered an order against appellant herein in the amount of $600 a month for the support of his mother and son.[1] Approximately one week later, on August 3, 1981, appellant filed a petition to decrease the $100 a week support order based on the changed circumstances of the Yugoslavian support order. The Master recommended that the petition be dismissed, timely exceptions to which were taken. A year later the matter was heard *de novo* by the Court of Common Pleas, which dismissed appellant's petition. This appeal followed.

\* \* \*

Initially, it should be determined whether a Yugoslavian support order is capable of taking on the character of a binding obligation upon a resident of this Commonwealth. For, if it cannot, it is a mere chimera, of no substance and incapable of supporting the conclusion that it has changed a Pennsylvanian's circumstances. For the following reasons we conclude that a Yugoslavian support order can be enforced in this Commonwealth.

The Restatement 2d, Conflict of Laws at § 98 reads: A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned.

Subject to some limitations, Pennsylvania follows this rule.[2]

---

**1.** This amount included $400 month support for his 23 year old son and $200 a month for his octogenarian mother.

**2.** It is an awkward curiosity that each of our Republic's 50 states is free to recognize, or not, subject to their own rules, the judgments of

A 1963 case of this Commonwealth's Supreme Court summarized Pennsylvania's attitude toward the court orders of foreign countries.

Although we must give full faith and credit under the mandate of the United States Constitution to a decree of adoption by a court of a sister state if such court had jurisdiction over the parties and the subject matter, judicial decrees rendered in foreign countries depend for recognition in Pennsylvania upon comity...

*In re Christoff's Estate,* 411 Pa. 419 at 422, 192 A.2d 737 at 738 (1963).

Applying Pennsylvania law, the Third Circuit explained the concept of comity.

Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

courts of foreign nations. One commentator has rather percipiently stated,

... much can be said for the suggestion that the measure of respect to which judgments of foreign nations are entitled should be regulated by a uniform national law rather than be left to the diverse views of the individual states. Furthermore, since the effect of such judgments in this country clearly affects our relations with other nations, the question would seem properly to fall within the federal sphere.

Reese, "The Status in This Country of Judgments Rendered Abroad," 50 Colum.L.Rev. 783 at 788 (1950).

This unseemly variety would seem to run counter to the central proposition of our federal system that matters affecting foreign relations are within the purview of federal, not state, law. See *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435 at 440 (1971), cert. den., 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

In *Christoff's Estate, supra,* Justice Jones concluded that this Commonwealth would "ordinarily grant recognition and credit to the decrees" of foreign tribunals "unless the decree is so palpably tainted by fraud or prejudice as to outrage our sense of justice, or where the process of the foreign tribunal was invoked to achieve a result contrary to our laws or public policy or to circumvent our laws or public policy." *In re Christoff's Estate, supra,* 411 Pa. at 424, 192 A.2d at 739.[3]

■ ·Thus, the Yugoslavian support order could potentially be enforced in Pennsylvanian courts by either of its beneficiaries against appellant.

\* \* \*

The Court of Common Pleas came to the conclusion the Yugoslavian order should not be given credibility because, in effect, "the process of the foreign tribunal was invoked ... to circumvent our laws."

> This Court was not convinced that the Yugoslavian Support Order was a legitimate and valid judgment in view of the fact that defendant willingly agreed not to appeal. Given the persistence with which defendant has fought against the non-support actions instituted by his wife, the Court finds it incredible that he would acquiesce to a judgment significantly greater than that of plaintiff's and forbear any right he would have to appeal such a judgment.

> The timing of the Yugoslavian support order, in that it only came about after Judge Brown had ordered support payments to defendant's wife, and the agreement by the parties that the foreign order would be non-appealable

---

**3.** There is no reason to doubt that this policy would include the recognition of foreign support orders. Though this does not appear to have occurred as yet in this Commonwealth, several of our sister states have had the opportunity to enforce foreign support orders. See *Cox v. Pow,* 182 So.2d 31 (Fla.App., 1966) and cases cited therein and 2 A.L.R.2d 1103, § 2–3.

leads this Court to believe that the support order was procured for fraudulent purposes. As such, it is not entitled to any credibility from this Court.

■ It is not necessary for us to decide whether or not the court below erred in concluding that the Yugoslavian support order was collusively obtained in order to reduce the wife's support payments.[4] Assuming that the Yugoslavian order represents a valid on-going obligation, its existence does not justify a reduction in the support payments made to appellee. The economics of the situation lead to this conclusion.

The total amount of appellant's support payments, foreign and domestic, is $1,000 per month. This is 44.5% of his net income of $2245 per month. Considering the number of adults being supported in two separate households, this total amount is not exorbitant.

Also, appellant is left with $1,245 per month net income for his personal maintenance. He is not beggared even by the combined Yugoslavian and Pennsylvania support payments.

Further, we note that the $100 per week support payment to appellee, appears to be a rather low figure when viewed in light of her net income of $163 per week and his net income.[5]

■ It was appellant's "burden of proving by competent evidence sufficient facts which show a material and substantial change in circumstances." *Shuster v. Shuster,* 226 Pa.Super. 542 at 545, 323 A.2d 760 at 761 (1974). While the Yugoslavian order is a change in appellant's circumstances, it is not—in view of appellant's and appellee's respective incomes—a material and substantial change in those cir-

4. An appellate court may independently arrive at different grounds from that advanced on appeal in affirming a lower court. *Commonwealth v. Cunningham,* 247 Pa.Super. 302, 372 A.2d 473 (1977).

5. We note here that the Pennsylvania Supreme Court in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984) announced a uniform state formula in support cases, although this Court recognizes that *Melzer* involved only support for children.

cumstances which would justify a reduction in support. *Commonwealth ex rel. Daubert v. Daubert,* 270 Pa.Super. 124, 410 A.2d 1280 (1979). Accordingly, there was no clear abuse of discretion in the court's order denying the petition to decrease support. *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer,* 226 Pa.Super. 301 at 303, 310 A.2d 672 at 673 (1973).

Affirmed.