**PRAVIN BANKER ASSOCIATES, LTD., Plaintiff,**

v.

**BANCO POPULAR DEL PERU and The Republic of Peru, Defendants.**

No. 93 Civ. 0094 (RWS).

United States District Court, S.D. New York.

Jan. 19, 1996.

---

Winthrop, Stimson, Putnam & Roberts, New York City (John F. Pritchard, Valerie Fitch, of counsel), for Plaintiff.

Baker & Hostetler, Washington, DC (Mark A. Cymrot, of counsel), for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Pravin Banker Associates, Ltd. ("Pravin") has filed a Notice to Settle Judgment, which is opposed by the defendants, Banco Popular del Peru ("Banco Popular") and the Republic of Peru ("Peru"). (Banco Popular and Peru are, collectively, the "Defendants").

For the reasons set forth below, judgment will be entered for Pravin in the amount of $2,161,539.78; plus pre-judgment simple interest accrued from October 26, 1995, through the date of judgment; plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961.

### The Parties

Pravin is a Delaware corporation having its principal place of business in New York City.

Banco Popular is a Peruvian state entity organized and incorporated under the laws of Peru and is a foreign state instrumentality as defined in 28 U.S.C. § 1603(b).

Peru is a foreign state as defined in 28 U.S.C. § 1603(a).

### Prior Proceedings

This action was commenced on January 7, 1993. By opinion and order dated February 24, 1994, *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 165 B.R. 379

(S.D.N.Y.1994) (*"Pravin I"*), Defendants were granted a stay of six months by way of an adjournment of Pravin's summary judgment motion.

At the expiration of the six-month adjournment, on October 24, 1994, the parties renewed and supplemented their motions. By opinion and order dated March 8, 1995, *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 1995 WL 102840 (S.D.N.Y.1995) (*"Pravin II"*), Defendants were granted a further stay of sixty days to enable the parties to submit responses to certain questions.

The parties submitted their responses, and, the sixty-day adjournment having expired, the motion and cross-motion were renewed. By opinion and order dated August 24, 1995, *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 895 F.Supp. 660 (S.D.N.Y.1995) (*"Pravin III"*), Defendants' motion to dismiss or stay the action was denied, and Pravin's motion for summary judgment in its favor regarding the enforcement of Defendants' obligations under the 1983 Financing Plan (the "Letter Agreement") and the Guaranty underlying the debt was granted. On September 5, 1995, the Clerk of Court entered the Judgment of August 31, 1995, pursuant to *Pravin III* that it was "Ordered Adjudged and Decreed that Plaintiff's motion for summary judgment is granted regarding the enforcement of the defendants' obligations under the Letter Agreement and the Guaranty...."

On September 14, 1995, Defendants moved, pursuant to Rule 58, Fed.R.Civ.P., by Order to Show Cause to vacate the Judgment on the grounds that the Judgment was not for a sum certain. Also on September 15, 1995, Defendants filed a notice of motion for an order extending their time to reargue *Pravin III.* Oral argument was held on September 18, 1995.

On October 12, 1995, an Order was issued granting both of Defendants' motions. The Order also provided that Pravin's memorandum and supporting affidavit in opposition to the motion to vacate the Judgment and in support of its supplementation of that Judgment would be treated as a Notice of Settlement of Judgment, returnable October 25. Defendants did not move for reargument.

Both sides submitted further papers on the Notice to Settle Judgment, and the matter was deemed fully submitted and heard on October 25, 1995. Subsequent to oral argument, Pravin Banker submitted a supplementary letter to the Court on October 26, 1995, and Defendants and Pravin each submitted a supplementary memorandum.

The facts and issues underlying this dispute are set forth in *Pravin I, Pravin II,* and *Pravin III,* familiarity with which is assumed.

### Discussion

In their Notice to Settle Judgment, Plaintiffs seek $2,121,605.43. They calculate this amount as follows. First, they request past-due principal of $1,425,000.00. Second, they request simple interest through October 25, 1995, of $466,806.00. Third, they seek interest on overdue interest payments through October 25, 1995, amounting to $78,315.07. Fourth, they seek attorneys' fees and costs they incurred as a result of the defaults in the amount of $191,428.71.

### I. Principal

■ Pravin seeks $1,425,000.00 in past-due principal, the amount sought in the Complaint. Defendants protest that Pravin has failed to deduct from the principal amount its "anticipated profits" as required by the Letter Agreement. Because anticipated profits, as meant by the Letter Agreement, are not included in this amount, the full past-due principal, $1,425,000.00, will be awarded to Pravin.

The $1,425,000 figure represents the entire principal of the working capital obligations set forth in the Letter Agreement. Pravin acquired this portion of the obligation on December 12, 1990, by acting as the broker in an assignment of $9,429,710.38 of Banco Popular's obligation from Mellon Bank to Swiss Bank and Banker's Trust. As a commission for its services, Pravin retained $1,425,000 of the obligation represented by the Letter Agreement. Pravin did not invest any funds of its own to obtain this portion of the obligation. Because Banco Popular had not paid principal on the obligation for six

years at the time of the transaction, Pravin valued this debt at twenty-seven cents on the dollar.

Paragraph 2(i) of the Letter Agreement reads as follows:

*Costs and Expenses and Losses.* You agree to pay on demand all costs and expenses, if any (including, but not limited to, reasonable attorneys' fees and expenses), in connection with the enforcement of this letter agreement, and all losses, costs and expenses sustained by us as a result of a default hereunder (including, but not limited to, reasonable attorneys' fees but *excluding anticipated profits*), provided that we shall have, to the extent practicable, substantiated such costs and expenses in reasonable detail.

(Emphasis added). Defendants read this clause to reflect the fact that because Pravin acquired the debt for a steep discount, the drafters of the Letter Agreement intended that Pravin be reimbursed only for its losses, but that Pravin not profit from default. A judgment for the full face of the debt, Defendants assert, would provide Pravin with a profit as a result of a default, since it paid less that full value for the debt. With a sovereign debtor, Defendants maintain, it was reasonable for the drafters of the Letter Agreement to include language barring what was perceived as an unjust imposition of an obligation on the debtors at one hundred cents on the dollar.

Yet the language cited by Defendants excluding anticipated profits is set forth in a paragraph referring not to the principal amount, but to attorneys' fees, costs, and other losses. Paragraph 3, the paragraph making all principal and interest payable in event of default, refers to principal and interest payments' becoming payable in full in event of default. The only way to reconcile the somewhat ambiguous "anticipated profits" term in Paragraph 2(i) with Paragraph 3 is to assume that it allows Pravin to collect the full amount of principal. A more reasonable interpretation, then, of the language in Paragraph 2(i), is that "anticipated profits" refers not to the difference between what Pravin paid for the debt and its full value, but to any "lost profits", such as interest or investment income, that it could have made by investing the proceeds of the debt had the default not occurred—that is, to "opportunity costs".

Defendants contend that the lack of language in Paragraph 3 concerning the exclusion of profits in the event of a default is not fatal to their position. They note that Paragraph 2 begins: "You agree as follows: *Repayment of the Affected Items.* You will pay to us the principal amount of each Affected Item on the Extended Maturity Date thereof." The remaining sections of Paragraph 2, including Paragraph 2(i), they argue, spell out specific terms regarding repayment of principal and interest, such as interest (paragraph 2(b)), payments and computations (paragraph 2(c)), and taxes (paragraph 2(d)). Paragraph 2(i), assert Defendants, sets forth the provisions for payments in the event of a default and very specifically deals with the debtor's obligations with respect to anticipated profits. These specific provision in paragraph 2(i), argue Defendants, govern the more general language in the Letter Agreement, such as that in Paragraph 3 providing that the debtor must repay the principal on the debt. *Restatement (Second) of Contracts* § 203(c) (1981) ("specific terms and exact terms are given greater weight than general language").

This interpretation of the Letter Agreement fails, however, given the lack of ambiguity in Paragraph 3 and the possibility of reconciling it with Paragraph 2(i) using Pravin's construction. The Letter Agreement does not say that the term "principal amount" has a different meaning once a default occurs than it would if the debt were paid on schedule. Nor does it say that once there is a default, the difference between what a lender or holder "paid" for the debt and the face amount must be calculated, with the result that a "new" principal amount comes into being.

Under Defendants' theory, they might never be responsible for the full $1,425,000 amount, or for any other full loan amount. All they would have to do is to default after the primary lender had assigned the debt to another lender for less than face value. The incentive for acquiring that type of debt, at

whatever cost, is the possibility of eventual full payment of principal as due under the contract, whether through on-time payments or in the event of default. In fact, Defendants' own actions support Pravin's argument. If it were possible for Defendants' to avoid repaying the $1,425,000, it is unlikely that Defendants would have consented to the assignment of the debt to Pravin for less than its par value, then paid Pravin interest for two years based on the par value principal amount of $1,425,000. Apparently, Defendants' understanding was that Pravin was entitled to $1,425,000 in principal, whether through on-time payments or in the event of default.

As an additional argument, Defendants point to a related agreement worked out as part of the overall financing plan for Peru instituted in the wake of the 1983 debt crisis. Peru's financing plan was set forth in the Working Memorandum of the External Debt Committee of the Ministry of Economy, Finance and Commerce of the Republic of Peru dated May 16, 1983. That Working Memorandum embodies an agreement in principle reached by Peru's commercial bank creditors for the handling of indebtedness outstanding on March 7, 1983. The Working Memorandum divided Peru's debt into three categories: short-term trade-related debt, short-term working-capital debt, and medium-term debt.

The debt held by Pravin and covered by the Letter Agreement is short-term working-capital debt. The medium-term debt was covered by a May 31, 1983, Credit Agreement between Peru, Citibank, N.A., as agent, and numerous other financial institutions. The Letter Agreement and the Credit Agreement were drafted by the same counsel at about the same time and involve many of the same parties.

Defendants thus argue that the two documents should be read together and contend that an examination of the disputed language in the Letter Agreement in that context demonstrates that the "anticipated profits" language cannot mean what Pravin claims it means. The Credit Agreement, note Defendants, contains the same term in its Paragraph 3.6(b).

*Funding Indemnity* ... the Borrower shall indemnify each B Bank against any loss (but *excluding loss of anticipated profits* ) or expense incurred by such Bank as a result of any inability or failure of the Borrower to fulfill any applicable condition of Borrowing on or before the date specified for such Borrowing, including without limitation, any loss (*excluding loss of anticipated profits* ) or expense incurred by reason of the liquidation or reemployment of deposits or other funds acquired by any B Bank to fund the B Advance to be made by such Bank as part of such Borrowing when such Advance, as a result of such failure, is not made on such date.

Defendants state that this paragraph contains similar subject matter to the disputed paragraph in the Letter Agreement. Both the Letter Agreement and the Credit Agreement, argue Defendants, provide for the indemnification of losses to the creditor that result from the default, but stipulate that such losses shall not include loss of anticipated profits. The Credit Agreement, however, argue Defendants, goes on to say that the borrower shall indemnify the lender banks for any loss of reinvestment profits they incur due to Peru's failure to repay the loan on a timely basis. This is the meaning, note Defendants, that Pravin ascribes to the term "anticipated profits" in the Letter Agreement. However, they argue, the Credit Agreement uses the term "anticipated profits" in the same sentence as the indemnification language for reinvestment income. Thus, conclude Defendants, to accept Pravin's interpretation of "anticipated profits" would be to render the rest of the language in Section 3.6(b) of the Credit Agreement meaningless.

It is an elementary principal of contract law, note Defendants, that a contract should not be interpreted so as to render a term superfluous. *Restatement (Second) of Contracts* § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). Thus, according to Defendants, a proper interpretation of the term "anticipated profits" can-

not be one in which it is defined as loss of reinvestment profits, and Paragraph 2(i) must, therefore, be given its plain meaning. The creditor must deduct from its claim any "anticipated profit" "sustained . . . as a result of a default hereunder." The term "anticipated profit", they argue, would mean any profit sustained as a result of the default. In this case, the discounted purchase price which Pravin paid for the Letter Agreement arose directly as a result of the default.

However, the provision to which Defendants refer concerns a different subject than repayment of principal when due. The meaning of lost "anticipated profits" is identical to that in the Letter Agreement and refers to the lost opportunity inherent in having money tied up unproductively. It protects the lending banks from losses they may incur when (1) the Borrower requests an advance from them, (2) the Banks in turn acquire "deposits or other funds . . . to fund" the Advance, (3) the Borrower fails to fulfill an applicable Borrowing condition (and thus fails to take down the Advance, and (4) the Banks are required to liquidate or reemploy the funds they obtained for the purpose of making the advance or otherwise sustain losses. The "Funding Indemnity" merely provides that under such circumstances, the Banks will be able to recoup any "loss" or "expense" which they may incur in order to satisfy the "Borrowing Request."

Further, as the section makes clear, the Banks are not to include any "loss of anticipated profits" which, in context, refers to the profits the Banks could have made had they had the use of the funds which they tied up in "deposits or other funds acquired . . . to fund" the Advance. Thus, the provision deals even more explicitly with precisely the same kind of "anticipated profits" as does the Letter Agreement. By reading the entire provision, including the lead-in phrase, it becomes apparent that both uses of the phrase "anticipated profits" refer to a loss of reinvestment profits.

Finally, to the extent that any ambiguity exists, it is reasonable to conclude that had the parties intended that the principal amount due upon default be less than face value, they would have included such an im-portant and unusual limitation in their agreement, rather than simply agreeing that a lender "may, by notice to [Defendants], declare the principal amount . . ., all interest thereon and all other amounts payable under this letter agreement to be forthwith due and payable. . . ."

For these reasons, Pravin will be awarded the full amount of $1,425,000 in principal.

## II. *Interest*

■ Pravin seeks interest due on the outstanding principal through October 25, 1995, of $545,521.07. Included in this amount is interest on overdue interest payments through that date amounting to $78,315.07. Defendants argue that they have no obligation under the Letter Agreement to pay Pravin interest on interest.

Peru failed to make interest payments to Pravin commencing as of the interest period beginning May 2, 1992. Pursuant to the Letter Agreement, interest on overdue principal is calculated at 2¼% per annum above the rate of interest announced publicly by Mellon Bank. A schedule of that rate was appended to Plaintiff's Memorandum in Opposition to Vacate Judgment and in Support of Supplementation of Judgment, and the $545,521.07 figure is based on that schedule.

■ The Letter Agreement reads:

If [Defendants] shall fail to pay any amount of interest payable hereunder in respect of any Affected Item when due, [they] shall, *to the extent permitted by applicable law,* pay interest on such overdue interest on demand from the date when due until payment thereof in full at the rate that would be applicable hereunder to such an amount of interest if it constituted overdue principal of such Affected Item.

(Emphasis added). Prior to 1989, New York law rendered contracts providing for interest on interest void as a matter of public policy. *Madison Personal Loan v. Parker,* 124 F.2d 143, 145 (2d Cir.1941); *Giventer v. Arnow,* 37 N.Y.2d 305, 372 N.Y.S.2d 63, 66–67, 333 N.E.2d 366, 369–70 (1975). On June 24, 1989, New York General Obligations Law § 5–527, took effect, providing in part that:

"A loan or other agreement providing for compound interest shall be enforceable. For purposes of this subdivision, the term 'compound interest' shall mean the accruing of interest upon unpaid interest irrespective of whether such unpaid interest is added to the principal debt." N.Y.G.O.L. § 5–527 (McKinney 1995 Supp.). The question, then, is, given the changes in New York law on the validity of contractual arrangements for the payment of interest on interest, whether "applicable law", as used in the Letter Agreement, refers to the law at the time the Letter Agreement was executed, at the time of default, or at the time collection was sought.

"Applicable law" can reasonably be read as a reflection of the parties' anticipation of a possible change in the law and of their desire to permit interest on interest if and when the law allowed such an arrangement. New York law at the time of the execution of the Letter Agreement was anomalous among the states and in a "state of confusion." *See* 1989 N.Y.Laws Ch. 202, Memorandum of Legislative Representative of City of New York, at 2109 (McKinney).

However, although there may have been some equitable exceptions made by New York trial courts, through the time of the making of the Letter Agreement "the New York Court of Appeals consistently ha[d] held that a contractual provision to pay interest on interest [was] void under the law of New York," *In re Chateaugay Corp.*, 170 B.R. 551, 551 (S.D.N.Y.1994) (citing *Debentureholders v. Continental Investment Corp.*, 679 F.2d 264, 271 (1st Cir.1982), *cert. denied*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982) (applying New York law)); *see Bruce v. Martin*, 845 F.Supp. 146, 149 (S.D.N.Y. 1994) (Sweet, J.) (*citing Giventer v. Arnow*, 37 N.Y.2d 305, 372 N.Y.S.2d 63, 333 N.E.2d 366 (1975) (provision to pay interest on interest is void).

■ No authorities have been cited by the parties, nor can the Court find any, that dispose of the issue of how to interpret the "applicable law" term. In the absence of any provision with respect to retroactivity, and in the interest of certainty, the better rule is to interpret the term as referring to the applicable law at the time of the agreement, rather than at the time of its enforcement. Under settled principles of statutory construction, a statute should be applied only prospectively absent clear language directing its retroactive application. *Thomas v. Bethlehem Steel Corp.*, 63 N.Y.2d 150, 481 N.Y.S.2d 33, 35, 470 N.E.2d 831, 833 (1984). Given the ambiguity here, this rule of statutory interpretation will be applied.

Such an interpretation is endorsed by the fact that the Letter Agreement anticipated a short-term lending arrangement. Although the law may have been unpredictable, it did not change until 1989, and Pravin's argument that the term anticipated a change in the law is, thus, less persuasive.

Pravin will be awarded $466,806.00 in simple pre-judgment interest; plus simple pre-judgment interest accrued from October 26, 1995, through the date of judgment; but it will not be awarded interest on overdue interest payments.

### III. *Attorneys' Fees and Costs*

■ Plaintiffs seek attorneys' fees and expenses incurred in the prosecution of the action of $191,428.71. Pravin has been billed a total of $189,835.20, $107,481.86 of which had been paid as of October 18, 1995. Therefore, as of that date, $82,353.34 in fees and expenses had been billed and remained outstanding. Fees for services performed and expenses incurred in October in the amount of $6,607.76, up to that date, had not yet been billed at that time. The disparity between the fees and expenses incurred by Pravin and the amount sought from Defendants is attributable to the fact that Pravin has not sought to recoup time spent negotiating a settlement or defending the fee application.

Defendants raise several objections to the attorneys' fees sought by Plaintiffs. They note at the outset that because a fee-shifting clause can produce perverse incentives for a litigant and counsel, courts must scrutinize fee requests to ascertain whether they are reasonable. *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (citing *Peter Fabrics*,

*Inc. v. S.S. Hermes,* 765 F.2d 306, 317 (2d Cir.1985)).

Pursuant to the Letter Agreement and the Guaranty, Defendants were obligated:

> to pay on demand all costs and expenses, if any (including, but not limited to, reasonable attorneys' fees and expenses), in connection with the enforcement of this letter agreement, and all losses, costs, and expenses, sustained by [Pravin] as a result of a default hereunder (including, but not limited to, reasonable attorneys' fees but excluding anticipated profits), provided that [Pravin] shall have, to the extent practicable, substantiated such costs and expenses in reasonable detail.

Defendants assert that Pravin has not adequately substantiated its costs and expenses. In *Banca Della Svizzera Italiana v. Cohen,* 756 F.Supp. 805, 808 (S.D.N.Y.1991) (Sweet, J.), this Court held the plaintiff's fee application reasonable when it provided an affidavit which "stated that the attorneys' hourly rates for which it seeks compensation are [the law firm's] standard rates," and when the firm "sufficiently documented [its] hours by setting forth an account of all the hours billed and a summary description of how those hours were spent. . . ." *Id.* Pravin has submitted copies of legal bills and time records substantiating the fees and expenses as part of its Memorandum in Opposition to Defendants' Motion to Vacate Judgment and in Support of Supplementation of Judgment. These documents set forth a description of the work performed, the date the work was performed, the attorney performing the work, the time expended, and the fees incurred. In addition, at the end of each narrative, the billing rates for the attorneys involved and the expenses incurred during that billing period are also set forth. These documents provide adequate substantiation.

■ Defendants object to certain fees incurred by Pravin as collateral to this litigation. To support this assertion, they single out charges to "review client financials and conferences with bonding company"; for "preparation of draft answer to complaint"; for "research regarding former employees and replacements at DOJ, Treasury Department and State Department and preparation

of memorandum thereon"; for time spent communicating with the United States Department of State regarding a request for intervention; for research and drafting papers on attachment which were never filed; for time spent on mediation; for a review of articles by Defendants' counsel Mark Cymrot on Peruvian debt restructuring; for conferences with reporters; for research and conferences regarding the Civil Justice Reform Act requirements and study of the Southern District of New York plan; for bonding of Pravin Banker Associates; for research on appealability of interlocutory orders; and for research regarding a procedural mandamus order. Defendants assert that under *U.S. Football League v. National Football League,* 887 F.2d 408, 414 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022, collateral charges are not admitted. *U.S. Football League,* however, approved the district court's opinion that time "spent on alternative ways to obtain relief" was fully compensable, because the " 'collateral issues' all stem[med] from and [were] related to a common core of facts." *Id.* The same is so of each of the charges listed by Defendants. All of the entries submitted by Pravin are reasonable and in connection with the enforcement of the Letter Agreement or a result of Defendants' default. Unlike in *Banca Della Svizzera,* fees owed to Pravin will not be limited to those incurred prior to the grant of summary judgment, because the time spent responding to Defendants' subsequent motion to vacate the judgment and in litigating the interest owed to Pravin was not insubstantial and falls under the definition of fees incurred in the "enforcement of the note" and "as a result of a default."

■ Defendants note further that services such as time spent negotiating a settlement or defending an attorneys' fee application are not covered by that provision, absent the existence of specific language to that effect. *Banca Della Svizzera,* 756 F.Supp. at 809. They also object that Pravin should not be able to collect fees for time spent in pursuing the payment of attorneys' fees. *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1266–67 (2d Cir.1987). Plaintiffs have not sought compensation for services their

attorneys expended in the pursuit of settlement or in seeking attorneys' fees. Time spent on mediation was due to this Court's order that the parties submit to mandatory mediation under the rules of this District and does not fall outside the fees authorized by the Agreement.

 Defendants object finally that they are not obligated to pay fees to Pravin, because Pravin has not paid fees to its counsel, and mere statements cannot be the basis for a fee award. Citing *Diamond D Enters.*, 979 F.2d at 20, they note that an award of attorneys' fees pursuant to a contractual fee-shifting provision must be reasonably related to the fee arrangement a client normally makes with an attorney. Nothing about Plaintiffs' fee has been suggested to or can be held to be unreasonably related to the fee arrangement a client normally makes with an attorney. Moreover, the Letter Agreement provides that Defendants "pay on demand" the reasonable attorneys' fees and expenses in connection with the enforcement of the Agreement, and all loses, costs, and expenses sustained by Pravin as a result of the default. That language does not contemplate or require prior payment by Pravin.

Defendants cite *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir.1987). There, the Court of Appeals took pains to note that "*under a contract calling for 'reimbursement' for attorney's fees ... a party is not entitled to an award exceeding the amount he has actually paid his attorney.*" *Id.* at 1269 (citations omitted). In *Krear*, the contract at issue contained a "loser pays" provision that "[i]n the event of any litigation, the prevailing party shall have the right to reimbursement of reasonable attorney's fees in regards to such litigation from the other." *Id.* at 1261. Here there is no such provision. Had the parties intended that payment to Pravin was contingent upon Pravin's payment to its law firm, the word "reimbursement" would have been incorporated into the Agreement. The services have been rendered and the fees and expenses incurred by Pravin, and whether Pravin has already paid them or will use the funds obtained from Defendants to pay them is irrelevant.

Finally, Defendants argue that the Court should decline to award attorney fees because to do so would be inequitable and unreasonable. However, Defendants neither cite controlling law for this proposition nor effectively demonstrate that it would be inequitable and unreasonable to award attorney fees to Pravin. Their assertion that Pravin's bringing this litigation was taken in bad faith is unavailing.

Pravin will be awarded $191,428.71 in attorneys' fees and costs.

### Conclusion

For the reasons cited above, Plaintiff's motion for summary judgment is granted regarding the enforcement of Defendant's obligations under the Letter Agreement and Guaranty, in a sum certain of $2,083,234.61, plus pre-judgment simple interest accrued from October 26, 1995, through the date of judgment; plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961.

Submit judgment on notice.

It is so ordered.