**PRAVIN BANKER ASSOCIATES, LTD., Plaintiff–Appellee,**

v.

**BANCO POPULAR DEL PERU and The Republic of Peru, Defendants–Appellants.**

**No. 248, Docket 96–7183.**

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1996.

Decided March 25, 1997.

See also 165 B.R. 379, 1995 WL 102840.

John F. Pritchard, New York, N.Y. (Valerie Fitch, Winthrop, Stimson, Putnam & Roberts, of counsel) for Plaintiff–Appellee.

Mark A. Cymrot, Baker & Hostetler, Washington, D.C., for Defendants–Appellants.

Before NEWMAN, Chief Judge, and OAKES and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

The reverberations of the international sovereign debt crisis of the 1980's are still being felt. Banco Popular del Peru ("Banco Popular") and the Republic of Peru ("Peru") appeal from a decision of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*), entered on August 24, 1995, granting summary judgment against them and denying their motion for or dismissal, or for a stay, of these proceedings pending completion of Peru's efforts to renegotiate its commercial debt under the Brady Plan. They seek a reversal of summary judgment or a stay of the execution of that judgment until Peru's renegotiation efforts are complete, arguing that the judgment for the appellee, Pravin Banker Associates, Ltd. ("Pravin"), threatens those negotiations and, hence, the successful economic rehabilitation of Peru. We find that the district court properly weighed America's competing interests in: a) ensuring the successful, voluntary resolution of past-due foreign sovereign debt and b) maintaining the enforceability of contracts under United States law. It then appropriately concluded that using principles of international comity to defer further the enforceability of Pravin's debt would violate United States policy. Accordingly, we affirm the district court's judgment.

## I. BACKGROUND

Banco Popular, a state-owned bank since 1970, provided loans and credit to public and private companies and individuals in Peru. In order to do so, it borrowed funds from many foreign financial institutions. This action concerns the small part of Peru's foreign debt that was borrowed by Banco Popular from Mellon Bank, N.A. of Pittsburgh, PA ("Mellon") and later sold to Pravin.

Following Mexico and a number of other Latin American countries, Peru announced in March 1983 that it had insufficient foreign exchange reserves to service its foreign debt, and that it was unable to get credit to do so. After its announcement, Peru negotiated with its creditors a series of agreements that stated terms for the settlement of various categories of Peruvian debt. Two of these,

the Mellon Letter Agreements, attempted to resolve more than $14 million owed as a result of over thirty separate short-term working capital loans that Mellon had made to Banco Popular. The agreements, signed by Mellon Bank and Banco Popular, extended the due dates on these loans for 360 days. In exchange, the government of Peru itself guaranteed the loans.

In 1984, a round of negotiations intended to provide a longer-term solution to Peru's liquidity crisis failed, and Peru imposed new restrictions on the payment of foreign exchange in order to prevent the depletion of its external reserves. As a result, Banco Popular stopped making the principal payments on the Mellon debt that were required by the Letter Agreements, and from 1984 until 1992, only paid interest. This put Banco Popular in default on the loans. In 1989, many of Peru's commercial lenders, including Mellon, filed lawsuits to preserve their legal claims because they worried that, if they did not do so, the statute of limitations would expire on the outstanding debts.

In 1990, after Alberto Fujimori was elected President of Peru, Peru's economic policies changed dramatically. President Fujimori began a major reform of the Peruvian economy and in doing so attempted to comply with International Monetary Fund ("IMF") policies. Following these changes, the Bank Advisory Committee, a committee of Peru's creditors headed by Citibank, N.A., signed an agreement with Peru to stay all pending lawsuits in order to promote negotiations to resolve the entire problem of the unpaid foreign debts. The stay was conditioned on Peru's continued efforts to maintain fiscally sound economic policies, and on none of the individual lawsuits being permitted to go forward alone. Mellon participated in these meetings and agreed to a stay of its own lawsuit on analogous terms. Since then, Peru has made significant strides in restructuring its economy, reducing inflation, and decreasing the government deficit.

Since 1990, the Bank Advisory Committee has continued negotiations with Peru with the aim of reaching a restructuring agreement, under the auspices of the IMF, that would be consistent with the Brady Plan.

Before the Brady Plan, announced by then United States Secretary of the Treasury Nicholas Brady in March of 1989, United States policy mainly encouraged additional lending to developing countries that were unable to service their sovereign debt. Under the Brady Plan, banks were, instead, urged voluntarily: (1) to reduce the foreign countries' debt burdens; (2) to restructure old debts; and, (3) as before, to provide additional loans. Countries entering Brady Plan negotiations are expected to conform to IMF requirements for restructuring their economy, and the IMF is charged with overseeing the negotiations between each country and its creditors. Thus, the plan contemplates a sharing of financial sacrifices between sovereign debtors and their commercial creditors in the context of negotiated and mutually agreed-upon terms.

The appellee, Pravin, acquired, at a discount in the secondary market for sovereign debt, $9 million (face value) of Banco Popular's debt to Mellon in 1990. Pravin resold most of this debt almost immediately, but continues to hold $1,425,000. Peru and Banco Popular were notified of the assignment from Mellon to Pravin, and Banco Popular, thereafter, made interest payments directly to Pravin.

Subsequently, Pravin alleges, Banco Popular stopped making interest payments, in violation of a new agreement between Pravin and the bank. Pravin contends that it then made a demand on Banco Popular for the principal and unpaid interest. When this demand was not met in February of 1992, Pravin declared Banco Popular in default on the debt. Later that year, since Banco Popular was unable to pay its creditors, Peru's central bank appointed a committee of liquidators to dissolve Banco Popular and to distribute its liquidated assets.

Pravin refused to join either the Peruvian liquidation proceedings or the Brady Plan negotiations. Instead, Pravin brought this suit against Banco Popular, and its guarantor, Peru, for non-payment of the debt. The defendants cross-moved to dismiss, stay, or deny Pravin's motion for summary judgment arguing that allowing the action to go forward would reawaken all of the other lawsuits that the Bank Advisory Committee had succeeded in having stayed. It would, Peru contends, result in a creditor stampede to find and attach Peruvian assets, and such a stampede would, in turn, disrupt Peru's structural reform efforts.

The district court granted a six-month stay to allow the orderly completion of Banco Popular's Peruvian liquidation proceedings. *See Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 165 B.R. 379 (S.D.N.Y. 1994) (*"Pravin I "*). After the six-month stay elapsed, Pravin renewed its motion for summary judgment and Banco Popular and Peru renewed their cross-motions for a stay or for dismissal of the complaint. They argued that this was essential to facilitate Peru's ongoing negotiations with the Bank Advisory Committee under the Brady Plan. The district court, thereupon, granted an additional two-month stay to permit the parties to submit further information to the court relating to: (1) the extent of Peru's debt problem, (2) Peru's efforts to resolve the problem through negotiations with its creditors, (3) whether there were other foreign debt actions pending against Peru, and (4) whether Peru had entered into any agreements that would toll the statute of limitations on Pravin's debt if Pravin did not continue its lawsuit against Peru. *See Pravin Banker Assocs., Ltd. v. Banco Popular del Peru,* 1995 WL 102840 (S.D.N.Y. Mar. 8, 1995) (*"Pravin II"*).

When this further stay expired, Pravin again renewed its motion for summary judgment, and the defendants again renewed their cross-motion for a stay or for dismissal. At this time, Peru and Banco Popular also advanced for the first time the argument that Pravin was not a proper assignee because, allegedly not being a financial institution, it was prohibited from buying the Mellon debt.

The court rejected this claim, denied the motion of Banco Popular and Peru to dismiss or stay the action, and granted Pravin's motion for summary judgment, thereby allowing enforcement of the debt. *See Pravin Banker Assocs. Ltd. v. Banco Popular del Peru,* 895 F.Supp. 660 (S.D.N.Y.1995) (*"Pravin III "*). On January 19, 1996, it entered judgment for Pravin in the amount of $2,161,539.78, plus

pre-judgment simple interest accrued from October 26, 1995 through the date of judgment, plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961. *See Pravin Banker Assocs. Ltd. v. Banco Popular del Peru,* 912 F.Supp. 77 (S.D.N.Y.1996) (*"Pravin IV"*).

After this decision issued, the defendants once again moved to stay the judgment pending the resolution of their Brady negotiations with creditors. The district court rejected the motion, but stayed the judgment for 30 days to allow the defendants to appeal the denial. This court thereupon denied the motion to stay unless a bond were posted in the full amount of the judgment. *Pravin Banker Assocs. Ltd. v. Banco Popular del Peru,* No. 96–7183 (2d Cir. Apr. 12, 1996). Before doing so, however, we asked the United States to express its views as to whether either denial of the motion to stay (or denial of the motion unless bond were posted) would contravene United States policy. The United States Attorney's office declined to submit a statement of interest, but sent a letter, the "Haber Letter," which indicated various sources of United States policy on foreign sovereign debt.

Peru and Banco Popular now appeal the denial of the motions to stay the proceedings and the grant of summary judgment. They argue that the court erred in failing to extend international comity to Peru's negotiations with the Bank Advisory Committee and in concluding that Pravin is a proper assignee of the Mellon debt.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Silano v. Sag Harbor Union Free School Dist. Bd. of Educ.,* 42 F.3d 719, 722 (2d Cir.1994), *cert. denied,* ―― U.S. ――, 115 S.Ct. 2612, 132 L.Ed.2d 856 (1995). Under Fed.R.Civ.P. 56(c), summary judgment should be granted if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

### A. International Comity

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Under the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States. *See, e.g., Cunard Steamship Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 456–60 (2d Cir.1985); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440–44 (3d Cir.1971).

Although courts in this country have long recognized the principles of international comity and have advocated them in order to promote cooperation and reciprocity with foreign lands, comity remains a rule of "practice, convenience, and expediency" rather than of law. *Somportex Ltd.,* 453 F.2d at 440; *see also id.* ("Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation."); *Cunard S.S. Co.,* 773 F.2d at 457 (quoting *Somportex*). And courts will not extend comity to foreign proceedings when doing so would be contrary to the policies or prejudicial to the interests of the United States. *See Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 522 (2d Cir.1985); *Somportex Ltd.,* 453 F.2d at 440. "No nation is under unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984).

Peru's efforts to negotiate a settlement of its unpaid debt to foreign creditors are acts by a foreign government that have extraterritorial effect in the United States. Because Peru contends that this suit, and the district court's grant of summary judgment,

is inconsistent with and disruptive to those efforts, the grant of summary judgment must be evaluated in the light of principles of international comity. *See Allied Bank Int'l,* 757 F.2d at 522 (considering the application of international comity to Costa Rica's efforts to renegotiate its foreign debt).

■■■■ As the district court recognized, however, extending comity to Peru's debt negotiations is only appropriate if it is consistent with United States government policy. The district court in *Pravin I* and *Pravin III* correctly identified two substantial aspects of United States policy that are implicated by this suit. First, the United States encourages participation in, and advocates the success of, IMF foreign debt resolution procedures under the Brady Plan. *See* Brief for the United States as *amicus curiae,* at 6–7, *CIBC Bank and Trust Co. (Cayman), v. Banco Central do Brasil,* 886 F.Supp. 1105 (S.D.N.Y.1995) (No. 94 Civ. 4733) [A 362–63]; Brief for the United States as *amicus curiae,* at 9–10, *Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516 (2d Cir. 1985) (No. 83–7714) [hereinafter *U.S. Allied Bank Brief*] [A 314–15]; International Debt Management Act of 1988, 22 U.S.C. §§ 5321–33. Second, the United States has a strong interest in ensuring the enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders. *See Allied Bank Int'l,* 757 F.2d at 521–22; *Weltover Inc. v. Republic of Argentina,* 941 F.2d 145, 153 (2d Cir.1991), *aff'd,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). This second interest limits the first so that, although the United States advocates negotiations to effect debt reduction and continued lending to defaulting foreign sovereigns, it maintains that creditor participation in such negotiations should be on a strictly voluntary basis. It also requires that debts remain enforceable throughout the negotiations. *See Allied Bank Int'l,* 757 F.2d at 519; *U.S. Allied Bank Brief* at 12, 15–16 (labeling the IMF framework "an essentially voluntary and cooperative process"); *National Union Fire Ins. Co. v. People's Republic of Congo,* 729 F.Supp. 936, 944 n. 5 (S.D.N.Y. 1989) (quoting Secretary of the Treasury Nicholas F. Brady, Address to the Brookings Institution and the Bretton Woods Committee (Mar. 10, 1989)).

In *Pravin I,* the district court found that a six-month stay to allow the completion of the on-going liquidation proceedings for Banco Popular would not significantly harm United States interests, and the court therefore granted the stay. In *Pravin III,* however, the court found that an indefinite stay to allow Peru to complete its efforts to renegotiate its foreign debt would prejudice United States interests, and it refused to grant one, instead granting summary judgment in favor of Pravin. We agree with the court's conclusion in both instances.

The six-month stay in *Pravin I* allowed Banco Popular's liquidation proceedings to be concluded. As such it followed the federal courts' long-standing recognition of foreign bankruptcy proceedings, *see, e.g., Drexel Burnham Lambert Group, Inc. v. Galadari,* 777 F.2d 877, 880 (2d Cir.1985), and did not threaten the long-term enforceability of the debt. To deny summary judgment in *Pravin III,* however, would have had a very different effect. It would first have denied Pravin its right to enforce the underlying debt—despite clear United States policy that it be able to do so—by making Pravin's rights conditional on the completion of a process which had no obvious (and reasonably proximate) termination date.[1] Second, it would have converted what the United States intended to be voluntary and open-ended negotiations between Peru and its creditors into the equivalent of a judicially-enforced bankruptcy proceeding, for it would, in effect, have prohibited the exercise of legal rights outside of the negotiations. *See U.S. Allied Bank Brief* at 11–12. Under the circumstances, the district court correctly ruled that summary judgment was appropriate.

■■■■ An argument might be made that, although summary judgment was appropriate, the circumstances of this case justified a stay of the proceedings or, in the alternative,

---

1. Although Peru's Brady agreement finally closed in early March 1997, *see* Sally Bowen, *Peru Completes Brady Deal,* Financial Times, Mar. 10, 1997, at 28, we note that the planned closing date had been delayed many times since the case was argued.

a stay of the execution of the judgment because either stay might allow the completion of Peru's negotiations with its creditors without unduly threatening the ultimate enforceability of the debt. The district court's denial of the motions by Peru and Banco Popular to stay the proceedings or execution of the judgment, however, are reviewed only for abuse of discretion. *Cf. United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir.1989) (a district court's decision on whether or not to extend comity to state court proceedings and stay a federal court proceeding is reviewed for abuse of discretion). Since Banco Popular and Peru do not argue that the district court abused its discretion in denying the motion to stay the proceedings or execution of the judgment, and there is no evidence that the court failed to consider the proper facts in evaluating whether to grant a stay, we affirm the district court's denial.

### B. Validity of the Assignment

 The claim that the assignment from Mellon to Pravin is invalid can be disposed of quickly. Under New York law, only *express* limitations on assignability are enforceable.

> [T]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way.

*University Mews Assocs. v. Jeanmarie*, 122 Misc.2d 434, 471 N.Y.S.2d 457, 461 (N.Y.Sup. Ct.1983); *see also Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 103 N.E.2d 891, 892 (1952) (noting that non-assignability language must be clear and definite). The Letter Agreement at issue provides: "This letter agreement shall be binding upon you [Banco Popular], your successors and assigns, and shall inure to the benefit of us [Mellon], our successors, transferees and assigns. We [Mellon] may assign all or any part of our interest in this letter agreement to any financial institution." [A 97] This language fails

to restrict the assignment expressly in any way. While it explicitly permits assignments to financial institutions, it does not limit assignments only to these entities. The assignment was therefore valid at the time it was made.[2]

Since we hold that as a matter of New York law, the debt was assignable to Pravin, whether or not it is a financial institution, there is no need to consider appellants' claim that factual issues exist as to whether Pravin is a financial institution.

### III. CONCLUSION

The district court correctly concluded that extending international comity to Peru's Brady agreement negotiations would be contrary to United States policy, and therefore properly refused to dismiss or stay the proceedings below until the completion of those negotiations. Similarly, the district court did not abuse its discretion in failing to stay the proceedings or the execution of the judgment during the course of the Brady negotiations. The district court also correctly held that the assignment of the debt from Mellon to Pravin was valid. Accordingly, it properly issued summary judgment.

We affirm the decision of the district court.

---

2. Even if the assignment had been invalid, moreover, Peru and Banco Popular—once notified of the assignment—acknowledged it, and made interest payments to Pravin as the assignee. This course of conduct would have effected a novation that Peru and Banco Popular would now be estopped from denying. *See Michelin Tire Co. v. Robbins*, 173 A.D. 955, 159 N.Y.S. 256, 256 (N.Y.App.Div.1916); *Lobee v. Denby Motor Truck Co.*, 163 N.Y.S. 951, 952–53 (N.Y.Sup.Ct.1917).